BENJAMIN R. DEVORE, Plaintiff, v. PEORIA INDUSTRIAL PIPING COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant (Jack T. Murphy, Third Party Defendant-Appellee).

Third District   No. 3—84—0714

Opinion filed August 14, 1985.—Rehearing denied September 25, 1985.

Duncan B. Cooper III and Gary S. Schwab, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

David B. Mueller and Timothy J. Cassidy, both of Cassidy & Mueller, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Peoria County dismissing the third-party complaint of Peoria Industrial Piping Company, Inc. (hereinafter PIPCO), seeking indemnification from Jack Murphy for his *pro rata* share of any liability for injuries suffered by the plaintiff, Benjamin DeVore.

This action began when DeVore filed a one-count complaint against PIPCO seeking recovery of damages for personal injuries arising out of a violation of section 16 of the Animal Control Act (Ill. Rev. Stat. 1981, ch. 8, par. 366), more commonly known as the Illinois "dog-bite" statute. This complaint alleged DeVore, on September 27, 1981, was peaceably conducting himself as a business invitee at PIPCO's place of business, where he had a lawful right to be, when German Sheperd dogs, without provocation, attacked and bit him. Further, as a direct and proximate result of the dog bites, DeVore became infected with a bacterial organism which caused him to suffer bacterial endocarditis, which destroyed an aortic valve, requiring a surgical operation to replace. PIPCO filed its answer denying the essential allegations of DeVore's complaint and thereafter filed a motion for leave to file a third-party complaint, which was allowed.

PIPCO's third-party complaint sought indemnity from Murphy for his *pro rata* share of any liability for DeVore's injuries. PIPCO alleged that Murphy brought his friend DeVore onto PIPCO's premises so Murphy could pick up a truck and take it home with him. The complaint further alleged that Murphy was utilizing the truck at the time and place for personal as opposed to business purposes and that if the dogs attacked and bit DeVore as he alleged, it was because Murphy failed to properly close a gate separating the driveway on which DeVore was situated from that part of PIPCO's premises on which the dogs were situated. Murphy filed a motion to dismiss third-party complaint, which the court allowed, dismissing

the third-party complaint with prejudice. PIPCO subsequently filed a motion to reconsider and further to allow PIPCO leave to file another third-party complaint against Murphy for both contribution and indemnification or, in the alternative, to certify the appropriate question of law for interlocutory appeal. This motion was denied. Thereafter, PIPCO moved for leave to file a four-count third-party complaint against Murphy for principal-agent indemnification, active-passive indemnification, equitable apportionment, and contribution.

This proposed third-party complaint alleged Murphy arrived with DeVore at PIPCO's premises when such business was closed; that Murphy was one of the keepers responsible for feeding the security guard dogs and was aware the dogs freely roamed after business hours on the premises to protect the premises from intruders; that Murphy, as an employee of PIPCO, owed a duty to properly open and close the gate so the guard dogs could not get out and cause injury to strangers, such as DeVore, located outside the enclosed area of the premises; and that Murphy was negligent in that he failed to properly close the gate, failed to lock up the guard dogs before opening the gate, failed to warn there were guard dogs and that the gate would be unlocked or opened, and failed to instruct DeVore to maintain a position so the dogs could not attack or injure him. The court denied PIPCO's motion for leave to file this revised third-party complaint.

A jury trial commenced as to the original action, and on the second day of trial the court declared a mistrial. DeVore and PIPCO subsequently entered into a settlement agreement. An order of dismissal with prejudice of the original action was entered pursuant to a written stipulation of those parties. PIPCO now appeals from the judgment of the circuit court allowing Murphy's motion to dismiss third-party complaint with prejudice, denying the motion to reconsider and denying the motion for leave to file the revised four-count third-party complaint.

The issue we are asked to decide on appeal is whether PIPCO is entitled to seek principal-agent indemnification, active-passive indemnification, equitable apportionment, and/or contribution from Murphy. Initially, PIPCO contends the trial court improperly refused to allow it to seek contribution against Murphy. PIPCO argues both itself and Murphy were "subject to liability" in tort for the same injury and that public policy favors making him who is culpable liable for his acts.

Section 2(a) of the Contribution Among Joint Tortfeasors Act states:

"Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." (Ill. Rev. Stat. 1983, ch. 70, par. 302(a).) PIPCO maintains Murphy was "subject to liability in tort" to DeVore for negligence by allegedly failing to properly close the gate, failing to lock up the guard dogs before opening the gate, failing to warn DeVore that there were guard dogs and that the gate would be unlocked or opened, and for failing to instruct DeVore to maintain a position so the dogs could not attack or injure him. PIPCO further maintains that it was "subject to liability in tort" to DeVore under a vicarious liability theory for the alleged acts of its employee, Murphy, if those events were found to fall within the scope of his employment, and it was also subject to liability in tort to DeVore under separate common law negligence and statutory dog-bite theories. PIPCO seeks a 100% right of contribution from Murphy for the damages it paid to DeVore.

Section 2(b) of the Act provides in relevant part that "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability" (Ill. Rev. Stat. 1983, ch. 70, par. 302(b)). Section 2(e) further provides that "[a] tortfeasor who settles with a claimant *** is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." Ill. Rev. Stat. 1983, ch. 70, par. 302(e).

■■ ■ Murphy argues that there is no showing that the settlement effected by PIPCO and DeVore exonerated Murphy of liability for his alleged breach and that as the burden of establishing the requisites of the claim in the record rests with the appellant, it can be assumed that the settlement reached reflected only the *pro rata* share of PIPCO. We agree. The order of the trial court stated:

"ORDER

Pursuant to the foregoing stipulation I order the above-captioned case be dismissed with prejudice, costs paid, cause of action satisfied.

ENTERED: October 15, 1984                    s/Peter J. Paolucci
                                             Judge."

The stipulation referred to in this order recited the following:

"STIPULATION

NOW COME the parties herein by their attorneys and stipu-

late and agree that the above-captioned cause be dismissed with prejudice, costs paid, cause of action satisfied.
[Signatures]."

Nowhere in the stipulation or order is there a reference to the claim of either DeVore or PIPCO against Murphy. Appellate procedure requires that the party appealing has the responsibility to perfect the record so as to support the questions raised in the appeal. (See *Robinson v. Moore* (1975), 30 Ill. App. 3d 915, 917, 332 N.E.2d 661, 663.) We find the record devoid of a showing that the settlement reached between PIPCO and DeVore represented liability greater than PIPCO's *pro rata* share, and that the settlement extinguished Murphy's liability.

We note that while the original rulings on the motions at issue in this appeal were made before PIPCO and DeVore agreed upon a settlement between them, the orders concerning these motions were not final and were subject to amendment at any time prior to final judgment. Consequently, the disposition of the main issue was relevant if it affected the posture of the proposed third-party complaint. When the orders concerning the motions became final appealable judgments, the settlement had been reached.

■ PIPCO's next contention is that the trial court improperly refused to allow it to seek equitable apportionment. The doctrine of equitable apportionment focuses upon the severability of the injury and typically is applied to situations where a second tortfeasor inflicts an injury successive to the one caused by the first tortfeasor. The original tortfeasor is held liable for all damages flowing from the original acts, despite the absence of control over the second tortfeasor's conduct. The doctrine permits the first tortfeasor to recoup that portion of the damages attributable to the conduct of the second tortfeasor. See *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979.

In *Van Jacobs*, the court stated that under the Contribution Act, the *Gertz*-type plaintiff could sue for contribution for damages attributable to the successive injury caused by the second tortfeasor, the reason being that both tortfeasors were subject to liability for the injury. The court did not, however, accept the plaintiff's equitable-apportionment theory. The court noted that while the plaintiff's allegations were couched in terms of equitable apportionment, the claim was actually made for contribution.

In the present case, PIPCO's pleadings do not support any theory of serial tortious acts. The acts presented do not give rise to

any equitable apportionment, since there are no successive torts or injuries, but only facts giving rise to contribution.

■■ Finally, PIPCO contends that the trial court improperly refused to allow it to seek principal-agent and active-passive implied indemnification against its employee, Murphy. PIPCO first argues that it should be indemnified in this case based upon the doctrine of *respondeat superior*. For this doctrine to apply, there must be a master-servant relationship and the servant's wrongful conduct must have been committed within the scope of the employment relationship. (*Laver v. Kingston* (1956), 11 Ill. App. 2d 323, 137 N.E.2d 113.) While it is undisputed that a master-servant relationship existed between the parties, the facts do not show that Murphy's activities at the time of the occurrence in question fall within the scope of this relationship. We hold, therefore, that the doctrine of *respondeat superior* is inapplicable.

■■ PIPCO also argues that active-passive implied indemnification justifies recovery and that this theory has survived the adoption of the Contribution Act. While much has been written concerning PIPCO's latter argument (see, *e.g.*, Widland, *Contribution: The End to Active-Passive Indemnity*, 69 Ill. B.J. 78 (1980)), and while our supreme court has commented on this question without resolving it (see *Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867; *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946), we find that this theory is not applicable *sub judice*. We disagree with PIPCO that it was a passive tortfeasor and Murphy was an active tortfeasor. Further, such a holding would be adverse to the public policy considerations encumbering the right of parties to own animals with the responsibility for any damages they cause.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.