KEITH L. PYNE, Plaintiff-Appellant, v. WILLIAM E. WITMER *et al.*, Defendants-Appellees.

Second District   Nos. 2—86—0532, 2—86—0686 cons.

Opinion filed August 6, 1987.—Rehearing denied September 10, 1987.

INGLIS, J., dissenting.

Pollock, Meyers & Eicksteadt, Ltd., of Marengo (Richard W. Eicksteadt, of counsel), for appellant.

Kell, Nuelle & Loizzo, of Woodstock (Vette E. Kell, of counsel), for appellees Edward F. Sass and Nancy L. Sass.

Judge & Knight, Ltd., of Park Ridge (Kristine A. Karlin, of counsel), for appellee D.R.W. Enterprises, Inc.

James P. Devine, of Williams & McCarthy, of Rockford, for other appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Keith L. Pyne, filed this action to recover damages sustained by him as a result of an automobile accident. The following parties were joined as defendants: William E. Witmer, the driver of one of the cars; D.R.W. Enterprises, Inc., a/k/a Standard Three, Witmer's employer (Standard Three); McHenry County and James R. Rakow, McHenry County superintendent of highways; the highway commission of Marengo Township; and Edward F. and Nancy L. Sass (Sasses), owners of property near the intersection where the accident occurred. McHenry County, Rakow, and the highway commission of Marengo County have settled with plaintiff, and these appeals do not concern them. Summary judgment was entered in favor of the Sasses, which plaintiff appeals in No. 86—0532. Summary judgment was also entered in favor of Standard Three, which plaintiff appeals in No. 86—0686. We affirm the order granting summary judgment for the Sasses, but find that unresolved issues of material fact preclude summary judgment for Standard Three.

On November 12, 1980, at approximately 10:30 p.m., plaintiff was driving his 1976 Dodge pickup truck westward on River Road in Marengo Township, McHenry County. At that time, Witmer was driving his 1976 Ford LTD southbound on County Line Road towards the intersection of River Road and County Line Road. The speed limit on both roads was 55 miles per hour, and at the intersection both roads are flat and straight. There were stop signs on the northwest and southeast corners of the intersection, both of which controlled north-south traffic on County Line Road. There were no stop signs for east-west traffic on River Road.

As plaintiff entered the intersection, he slowed from approximately 55 miles per hour to 45 miles per hour. Witmer, traveling approximately 40 miles per hour, entered the intersection at the same time, and the vehicles collided in the southwest quadrant of the intersection. The impact carried both vehicles into a plowed field. Plaintiff's car struck a utility pole and came to rest. Witmer's car burst

into flames, and Witmer died as a result of his injuries.

Plaintiff remembers little of the accident. He does not recall seeing Witmer's car until one or two seconds before impact. He did not see headlights on the pavement because the intersection is lit by a street light on the southwest corner.

The Sasses own the property on the northeast corner of the intersection. They farmed the land, but rented out the farmhouse on the corner. The property was landscaped with bushes which were there when Sasses purchased the property. An investigator hired by plaintiff measured the bushes, which formed a hedge, and found them to be over six feet high. The hedge ran along both County Line and River Roads and was 17 feet north of River Road and 20 feet 6 inches east of County Line Road. There was evidence that westbound traffic on River Road would be unable to see southbound traffic on County Line Road and vice versa until both vehicles would be within two car lengths of the intersection. The hedge did not, however, obscure the stop sign, and the Sasses stated that they had no problem seeing east on River Road when pulling up to the intersection from the north.

At the time of the accident, Witmer was employed by defendant Standard Three as a mechanic. On the night of the accident, Witmer had taken a National Automotive Institute Service Excellence Certification Test at Rock Valley College in Rockford, Illinois. Standard Three had paid Witmer's test fee, but Witmer was driving his own car and was not being paid or reimbursed for expenses while taking the test. The parties dispute whether Witmer was taking the test of his own initiative or if he had been required to do so by Standard Three. It is undisputed, however, that Witmer was intoxicated at the time of the collision and that beer cans were found in his car. There is also little question but that Witmer was going approximately 40 miles per hour and that he had failed to heed the stop sign on County Line Road.

APPEAL NUMBER 86—0532

██ █ Plaintiff first argues that the trial court erred in granting Sasses' motion for summary judgment on count VII of plaintiff's third amended complaint. Count VII alleged, *inter alia*, that Sasses breached their duty to remove or trim the hedge which plaintiff claims obstructed visibility at the intersection of River Road and County Line Road. The trial court found no such duty was owed by Sasses to plaintiff. We agree.

It is axiomatic that a motion for summary judgment should only be granted if the pleadings, depositions, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005; *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 339.) Even if there are fact issues in dispute, however, they must be material to the essential elements of the cause of action or defense, and those which are unrelated, no matter how sharply controverted, do not warrant the denial of summary judgment. (*Shultz v. American National Bank & Trust Co.* (1976), 40 Ill. App. 3d 800, 805.) Plaintiff here claims that a question of material fact is presented in whether and by how much Sasses' hedge restricted the diagonal sight lines of motorists approaching the intersection. In this appeal, we are of the opinion that the degree to which the hedge obstructed vision is not material to the issue of whether a duty exists (*Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 340), and thus the question of the degree of obstruction of diagonal sight lines at the intersection does not preclude summary judgment.

■■ ■ To adequately state a cause of action for negligence, a plaintiff's allegations must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162.) While whether a duty has been breached and whether the breach proximately caused an injury are questions of fact, the existence of a duty must be determined by the courts as a matter of law. (98 Ill. 2d 158, 163.) The law applicable to motions for summary judgment which involve the issue of duty is set forth in *Barnes v. Washington* (1973), 56 Ill. 2d 22:

> " 'It may be stated generally that if what is contained in the pleadings and affidavits would have constituted all the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered.' (*Fooden v. Board of Governors*, 48 Ill. 2d 580, at 587.) This court has also held that the entry of a summary judgment is proper when only a question of law is involved. (*Allen v. Meyer*, 14 Ill. 2d 284.) Thus, if under the pleadings and affidavits it appears that the defendant owed no duty to the [plaintiff], the granting of the motion for summary judgment was proper." (56 Ill. 2d 22, 26-27.)

Plaintiff here argues that the trial court erred in granting defendant's motion because a duty was imposed by two public safety statutes. The first such statute is section 221(5) of "An Act to revise the law in re-

lation to criminal jurisprudence," which provides that it is a public nuisance:

"To obstruct or encroach upon public highways, private ways, streets, alleys, commons, landing places, and ways to burying places." (Ill. Rev. Stat. 1979, ch. 100½, par. 26(5).)

The second such statute is section 9—118 of the Illinois Highway Code, which provides as follows:

"Any association, society, person or persons may, upon obtaining a permit from the highway authorities having jurisdiction over the particular highway, and the consent in writing of the owners of adjacent property, plant or set out trees, shrubs, plants or flowers in or upon the right-of-way of any highway within this State, provided that no such tree, shrub, or flower shall be permitted to obstruct the vision of persons traveling upon or across such highways." (Ill. Rev. Stat. 1979, ch. 121, par. 9—118.)

It is true that violation of a public safety statute is *prima facie* evidence of negligence, provided that the statute was intended to protect against the injury incurred and that the injured party is within the class intended to be protected. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390.) It does not appear, however, that Sasses were in violation of the statutes plaintiff raises.

■ Plaintiff contends that an off-road visual obstruction may constitute an obstruction or encroachment upon a public highway so as to constitute a public nuisance. A primary rule of statutory construction is that the intention of the legislature should be ascertained and given effect. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475-76.) In construing the intent of the legislature, the court must look to the language of the statute, and that language should normally be given its ordinary meaning. (*Potts v. Industrial Com.* (1980), 83 Ill. 2d 48, 51.) Giving the words "obstruct" and "encroach" their ordinary meanings, it seems that the nuisance statute more properly applies to conditions within or upon the roadway which interfere with movement over the road. Black's Law Dictionary, Fifth Edition, does include within the definition of "obstruct" the following: "To be or come in the way of or to cut off the sight of an object." The full definition, however, refers to impediments to progress: "To block up; to interpose obstacles; to render impassable; to fill with barriers or impediments, *as to obstruct a road or way.*" (Emphasis added.) (Black's Law Dictionary 972 (5th ed. 1979).) Other courts have refused to construe adjoining foliage as a defect in a highway. (See, *e.g., Heller v. Brown* (1971), 29 Conn. Supp. 365, 288 A.2d 906; *Bohm v. Racette* (1925), 118 Kan.

670, 236 P. 811; *Phillips v. State Highway Com.* (1937), 146 Kan. 112, 68 P.2d 1087; *Johnson v. Township of Southampton* (1978), 157 N.J. Super. 518, 385 A.2d 260; *Royce v. Smith* (1981), 68 Ohio St. 2d 106, 429 N.E.2d 134.) We likewise conclude that our nuisance statute does not apply to foliage which, although adjoining a roadway, does not interfere with movement over the road.

■ It also appears that the section of the Illinois Highway Code relied on by plaintiff is not applicable to this case. The statute applies to foliage planted *in the right-of-way* of a highway. (Ill. Rev. Stat. 1979, ch. 121, par. 9—118.) Here there is no evidence that the complained-of hedge was on the right-of-way of either River Road or County Line Road. To the contrary, measurements taken indicate that the hedge is 20 feet 6 inches east of County Line Road and 17 feet north of River Road. Thus, any duty owed by Sasses to plaintiff could not be based on the statutes plaintiff cites.

Plaintiff also claims that Sasses had a duty based in common law to maintain the property in a condition so that a motorist approaching the intersection can see other approaching motorists. Plaintiff, however, has cited no authority for the proposition that a property owner has such a duty.

Sasses have directed us to the early Illinois case of *McLaughlin v. Alton R.R.* (1935), 278 Ill. App. 551, wherein plaintiff sued the railroad, claiming that weeds in the railroad right-of-way obscured vision at an intersection causing plaintiff to collide with another vehicle. The court there specifically stated that "[n]either the railroad company nor the owners of other lands bordering along this [highway] owed any duty to persons using said highway to keep their lands free and clear of horseweeds, rosinweeds and brush in order that the view of such persons might not be obstructed, and that they might be able to see cars approaching along intersecting highways." (278 Ill. App. 551, 557.) Research has revealed no later Illinois cases holding to the contrary. Courts in sister States have reached identical conclusions on similar facts. See, *e.g., Evans v. Southern Holding Corp.* (Fla. App. 1980), 391 So. 2d 231; *Bohm v. Racette* (1925), 118 Kan. 670, 236 P. 811.

The case on which plaintiff places much emphasis, *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, is distinguishable from the present case. Our supreme court there held that the city did have a duty to remove foliage which obstructed vision at an intersection. There, however, there was no traffic control device at the intersection. More importantly, the duty of the city was based on city ordinances which specifically required the city to remove such visual ob-

structions. (71 Ill. 2d 1, 11.) No such ordinance is applicable in this case.

■ Based on the foregoing, we conclude, in the absence of a statutory directive to the contrary, that there is no duty in Illinois on a landowner to remove foliage on his property so that motorists approaching an intersection can see other intersecting motorists. Considering the burden such a duty would impose on private property owners, we leave the imposition of such duty to the legislature. The trial court therefore did not err in granting the Sasses' motion for summary judgment.

APPEAL NUMBER 86—0686

In count II of plaintiff's third amended complaint, plaintiff alleged that Witmer was acting within the scope of his employment with Standard Three at the time of the accident. Plaintiff therefore sought to hold Standard Three liable under the doctrine of *respondeat superior*. On Standard Three's motion for summary judgment, however, the trial court decided that as a matter of law plaintiff could not prove that Witmer was acting within the scope of his employment at the time of the accident and granted the motion.

■ ■ As noted above, summary judgment is proper when the pleadings, together with the depositions, affidavits, and other material filed in support of and in opposition to the motion, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (*Sauers v. City of Woodstock* (1983), 113 Ill. App. 3d 892, 900-901.) The purpose of a summary judgment proceeding is not to try an issue of fact but rather to determine whether there is an issue of fact to be tried, and a reviewing court will reverse an order granting summary judgment if it is determined that a question of material fact exists. (113 Ill. App. 3d 892, 901.) Although summary judgment provides a means of disposing of cases with dispatch, it is a drastic method which should be employed only in cases in which the moving party's right to it is free from doubt. 113 Ill. App. 3d 892, 901.

■ ■ To hold an employer liable for an employee's wrongful conduct under *respondeat superior*, two requirements must be met. First, there must be a master-servant relationship. (*DeVore v. Peoria Industrial Piping Co.* (1985), 135 Ill. App. 3d 966, 971.) It is undisputed here that Witmer was an employee of Standard Three. Second, the servant's wrongful conduct must have been committed within the scope of the employment relationship. (135 Ill. App. 3d 966, 971.) Plaintiff claims there are questions of material fact present on this is-

sue which preclude summary judgment. Standard Three, on the other hand, contends that summary judgment was proper since Witmer was clearly not acting within the scope of his employment at the time of the accident, but was on a frolic of his own.

■■ There is no precise definition of the term "scope of employment." (*Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493.) "[T]he focus is generally upon the issues of whether the employee's act was conducted substantially within the constraints of authorized time and location of the employment [citations], and whether the conduct was actuated at least in part by a purpose to further the employer's business." (97 Ill. App. 3d 488, 493.) Whether an employee is acting within the scope of his employment is usually a question for the trier of fact. 97 Ill. App. 3d 488, 494.

■■ The first issue is whether taking the certification test was within the scope of Witmer's employment. If not, the travel to and from the test would not be within the scope of his employment either. Plaintiff argues that Witmer was directed to take the test by Standard Three. There is no doubt that Standard Three paid Witmer's test fee, although there is some question of whether Witmer was to pay it back. Plaintiff also points to the benefits Standard Three would obtain if Witmer were certified. Among these, Standard Three would be in compliance with its own advertisements which stated that only certified mechanics were employed, Standard Three would enjoy better customer relations by using a certified mechanic, and more accurate estimates would be given by a certified mechanic. There is also some indication that Amoco was considering requiring its affiliated stations to employ only certified mechanics.

Standard Three points to facts which it contends show that the test was taken solely for Witmer's own benefit. Standard Three notes that Witmer was not paid to take the test, that he drove his own car to the test and would not have been reimbursed for expenses, and that he was not given time off to take the test. Standard Three also contends that Witmer had first brought up the idea of taking the test and that Standard Three merely helped Witmer as a favor.

It would appear from the foregoing recitation that a genuine issue of material fact is presented of whether Witmer was within the scope of his employment when taking the test. Although Witmer would have personally benefited, Standard Three would also benefit from having a certified mechanic. There is also a question of whether Witmer was required by Standard Three to take the test. Such questions are to be decided by the trier of fact.

■■ Standard Three next argues that even if the test was within

the scope of Witmer's employment, traveling to and from the test site was not. The general rule is that an employee traveling to and from the place of employment is beyond the scope of the employment relationship. (*Sloma v. Pfluger* (1970), 125 Ill. App. 2d 347, 356.) There are exceptions to the general rule, however, such as when the employment requires the employee to be traveling or away from the employer's regular premises. (*Humphrey v. Industrial Com.* (1979), 76 Ill. 2d 333, 336.) If the jury were to conclude that Witmer was within the scope of his employment while taking the test, it could also conclude that the "travel was made necessary by special requirements of the employment." *Warren v. Industrial Com.* (1975), 61 Ill. 2d 373, 377.

▇▇ Even if the test and travel were within the scope of Witmer's employment, Standard Three argues, Witmer was on a frolic of his own at the time of the accident. There is evidence that Witmer was intoxicated at the time of the accident, although it is not clear whether he became so before or after the test. There is also evidence that Witmer signed out of the test at 7:50 p.m. and that his whereabouts between that time and 10:30 p.m., the time of the accident, were unknown. Furthermore, Standard Three argues that drinking on the job was against company policy.

It is well settled that an employer is not to be held vicariously liable for injuries caused by an employee who is engaged in a frolic of his own, as he is considered at that time to be outside the scope of his employment. (*Prince v. Atchison, Topeka & Santa Fe Ry. Co.* (1979), 76 Ill. App. 3d 898, 901.) We cannot conclude, however, that as a matter of law Witmer had left the scope of his employment, assuming for now that the test was within that scope. We believe that the jury could draw varying inferences from the evidence presented, one of them being that Witmer was within the scope of his employment from the time he departed for the test to the time of the accident. Standard Three argues that, as in *Prince v. Atchison, Topeka & Santa Fe Ry. Co.* (1979), 76 Ill. App. 3d 898, whether Witmer intended to return to the scope of his employment cannot be ascertained. Standard Three's reliance on *Prince* is misplaced. The *Prince* court determined *as a matter of law* that the employees there were on a frolic before their accident. (76 Ill. App. 3d 898, 903.) Thus, the issue there was whether there was evidence from which the jury could infer that the employees intended to return to the scope of their employment at the time of the accident. (76 Ill. App. 3d 898, 905.) In the present case, however, it is not clear that Witmer was ever on a frolic, so whether he was within the scope of his employment at the time of the accident remains a genuine issue of material fact which precludes entry of

summary judgment in favor of Standard Three.

■■ Finally, Witmer's violation of Standard Three's company policy against drinking on the job does not preclude liability under *respondeat superior*. An employer is not relieved from liability because an employee does a forbidden act while engaged in the business of the employer. (*Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 1090-91.) Furthermore, the existence of such a policy should not affect the rights of plaintiff, an innocent third party with no knowledge of the policy.

In summary, in appeal number 86—0532, the Sasses did not breach a duty owed to plaintiff. Summary judgment for the Sasses was thus proper. In appeal number 86—0686, a question of material fact is presented in whether Witmer was acting within the scope of his employment at the time of the accident. Summary judgment for Standard Three was thus improper. We therefore remand this cause to the circuit court of McHenry County for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

NASH, J., concurs.

JUSTICE INGLIS, dissenting:

I concur in the summary judgment entered in favor of the Sasses in No. 86—0532. I respectfully dissent with the decision to reverse the order granting summary judgment to Standard Three in 86—0686.

Use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) It is axiomatic that the purpose of summary judgment proceedings is not to try an issue of fact, but to determine whether one exists. (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393; *Golden v. Marshall Field & Co.* (1985), 134 Ill. App. 3d 100, 101.) Summary judgment should not be reversed absent an abuse of discretion by the trial court such that plaintiff's right to fundamental justice is violated. *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 362.

The trial court was correct in granting summary judgment to Standard Three because Witmer was clearly not acting within the scope of his employment at the time of the accident, but was on a frolic of his own. The debate over whether taking the test was within the scope of Witmer's employment unfortunately distracts from facts clearly indicating that Witmer was on a frolic of his own and was,

therefore, outside the scope of his employment.

The parties do not dispute that Witmer (1) checked out of the test at 7:50 p.m.; (2) was driving his own vehicle after ordinary working hours; and (3) was legally intoxicated at the time of the accident (10:30 p.m.). Furthermore, there is no dispute regarding the distance between the test site (Rockford) and Witmer's home (Elgin), nor is there any dispute regarding the reasonable time of travel between those points. Finally, there is no testimony regarding Witmer's whereabouts between the time he checked out of the test and the time of the accident, and no one knows where he was going or what his intentions were during that period.

Despite these facts clearly supporting the trial court's order entering summary judgment in favor of Standard Three, the majority states that it "cannot conclude, however, that as a matter of law Witmer had left the scope of his employment." (159 Ill. App. 3d at 264.) The majority goes on to state that "the jury could draw varying inferences from the evidence presented, one of them being that Witmer was within the scope of his employment from the time he departed for the test to the time of the accident." 159 Ill. App. 3d at 264.

I believe this decision runs contrary to the facts of this case and similar cases addressing these issues. For example, in *Prince v. Atchison, Topeka & Sante Fe Ry. Co.* (1979), 76 Ill. App. 3d 898, 903, the court ruled, *as a matter of law*, that the employees there were on a frolic prior to their involvement in an accident. In that case, an employee, McCasky, drove his own vehicle from Morton to a jobsite in Pekin with instructions to return to Morton at 4 p.m. (76 Ill. App. 3d 898, 901-02.) McCasky and a co-worker began drinking on the jobsite and left that site in an intoxicated condition at around 12 p.m. (76 Ill. App. 3d 898, 902.) They were not seen again until approximately 2:30 p.m., when they turned up at a bar approximately 16 miles from the jobsite. (76 Ill. App. 3d 898, 902.) Approximately one-half hour later, they were involved in an accident resulting in the death of another motorist. (76 Ill. App. 3d 898, 902.) Before reaching the issue of whether McCasky was in the scope of his employment at the time of the accident, the court stated that "[t]here is no question that at 2:30 on the afternoon of November 12, McCasky and Payton were on a frolic and consequently were outside the scope of their employment." 76 Ill. App. 3d 898, 903.

Curiously, although noting that "[t]he *Prince* court determined, *as a matter of law*, that the employees there were on a frolic before their accident," the majority distinguishes that case from the instant action merely by stating that in the instant case, "it is not clear that

Witmer was ever was on a frolic, so whether he was within the scope of his employment at the time of the accident remains a genuine issue of material fact which precludes entry of summary judgment in favor of Standard Three." (159 Ill. App. 3d at 264-65.) However, just as McCasky left his jobsite and turned up at a tavern some 16 miles away (76 Ill. App. 3d 898, 902), Witmer left the test, and, rather than proceeding home, disappeared for one hour and 40 minutes, before turning up at the accident scene intoxicated. With respect to the employee's conduct prior to the accident, these cases are indistinguishable.

Furthermore, there is no evidence of Witmer's reentering the scope of employment. In *Prince*, testimony was introduced that at 2:45 p.m., McCasky's co-worker stated that they should be leaving because "they had a rider to pick up in Morton in fifteen minutes," and "they were going to Morton." (76 Ill. App. 3d 898, 902.) The court held that McCasky's destination could not reasonably be inferred from the co-worker's statements. (76 Ill. App. 3d 898, 904.) Noting that one of the elements in determining whether an employee has reentered the scope of employment is whether he formulated the intent to act in furtherance of the employer's business, the *Prince* court stated that "[b]ecause there is no concrete evidence as to McCasky's intention, the first part of the reentry test is not met, and consequently we hold that McCasky had not reentered his employment at the time of the accident." 76 Ill. App. 3d 898, 905.

Just as the statements by McCasky's co-worker regarding their destination were not "concrete" enough to establish intent in *Prince*, the instant action presents an even stronger case for failure to reenter the scope of employment after a frolic since the only evidence of Witmer's intent is that he was traveling in the general direction of Elgin. Sending this matter to a jury will only allow them to guess or speculate as to the last one hour and 40 minutes of Witmer's travel. If the conclusion is drawn that Witmer's intention was to return to Elgin and resume his employer's business (the next day), it would be based on mere conjecture, guess, and speculation. This is not permitted. *D'Olier v. General Motors Corp.* (1986), 145 Ill. App. 3d 543, 548.

In the instant action, although the record discloses a factual dispute regarding whether the test itself was within the scope of employment, it nonetheless clearly supports the conclusion that Witmer was on a frolic at the time of the accident.

Accordingly, I submit that granting summary judgment was appropriate in this case and would affirm the trial court.