Bob DRIGGERS *v.* Ken LOCKE

95-598                                          913 S.W.2d 269

Supreme Court of Arkansas
Opinion delivered January 16, 1996

64

*Gary Eubanks & Associates*, by: *James Gerard Schulze* and *T. Michael Lee*, for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Beverly A. Rowlett*, for appellee.

DAVID NEWBERN, Justice. Bob Driggers, the appellant, sued Buddy Neal and Ken and Louann Locke for damages resulting from an automobile accident which occurred at an intersection in Arkadelphia. The record reveals that Mr. Driggers was unable to serve Buddy Neal, the driver of the other vehicle. The allegation against the Lockes was that holly bushes growing on their property at the intersection so impaired motorists' ability to see oncoming vehicles as to be a cause of the accident. The Lockes denied liability and moved for summary judgment which was entered in their favor. Mr. Driggers took a voluntary nonsuit of his claim against Buddy Neal and appealed the summary judgment which we affirm.

### 1. Finality of the order

Although no issue as to the finality of the order has been raised by the parties, our recent decision in *Haile* v. *Arkansas Power & Light Co.*, 322 Ark. 29, 907 S.W.2d 122 (1995), raises a question whether the summary judgment is a final,

appealable order. In the *Haile* case, as we had done in *Ratzlaff v. Franz Foods of Ark.*, 255 Ark. 373, 500 S.W.2d 379 (1973), we held that a party who has several claims against another may not take a voluntary nonsuit of one claim and appeal an adverse judgment as to the other claims when it is clear that the intent is to refile the nonsuited claim and thus give rise to the possibility of piecemeal appeals.

This case is different in that the nonsuit is not with respect to one of several claims against a party; it is a nonsuit with respect to one of several parties. Arkansas R. Civ. P. 54(b) makes it clear that when there are multiple parties the disposition of the case as to fewer than all does not amount to a final, appealable order absent a certification of the Trial Court that there is no need to delay the entry of a final judgment. Of course, as a technical or formal proposition, Mr. Driggers has no remaining claim before the Trial Court in view of the nonsuit and the summary judgment, so Rule 54(b) is not applicable. That does not, however, answer the question whether the rationale of the *Haile* and *Ratzlaff* cases should apply.

We have found very little authority on the matter of the finality of a judgment when there has been a nonsuit without prejudice against one of multiple parties to litigation arising out of a single incident. We do know that we have not dismissed other appeals which have come to us in this posture. *See, e.g.,* the recent case of *Bryant v. Putnam,* 322 Ark. 284, 908 S.W.2d 338 (1995).

Focusing on the issue more intensely than we did in the *Bryant* case, we see at least one distinct flaw in the proposition that the rationale causing dismissal in cases of voluntary nonsuit of one of multiple claims against a single party should apply when the nonsuit is with respect to one of multiple parties. Nothing requires a plaintiff to sue the prospective defendants simultaneously. If, however, a plaintiff has a number of claims against a single party, the doctrine of *res judicata* will bar issues which could have been litigated between them but were not. *In Matter of Estate of Goston v. Ford Motor Co.,* 320 Ark. 699, 898 S.W.2d 471 (1995); *Standridge v. Standridge,* 304 Ark. 364, 803 S.W.2d 496 (1991). If Mr. Driggers had sued the Lockes and not joined Buddy Neal, the summary judgment in

favor of the Lockes would have unquestionably been a final, appealable order, and he could have sued Buddy Neal later. The fact that he began an action against Buddy Neal and then took a nonsuit leaves the parties in the same positions as they would have occupied had the claim against Buddy Neal merely been delayed rather than nonsuited.

■ The one case we have found which airs a similar issue based on similar facts is *Fassett* v. *Delta Kappa Epsilon (New York)*, 807 F.2d 1150 (3d Cir. 1986). The opinion suggests the appeal would not have been considered final but for the fact that the statute of limitations had run on the claim against the party nonsuited, thus the litigation was effectively over. This litigation may also be over with respect to the claim against Buddy Neal in view of the apparent inability of Mr. Driggers to serve Mr. Neal and in view of the Lockes' answer stating, "upon information and knowledge that Buddy Neal is deceased and therefore is no longer a resident of Clark County, Arkansas." Regardless of this additional practical possibility, we hold the rationale of the *Haile* case does not apply when the nonsuit is as to a party and not an issue in the case. We thus proceed to the merits of the summary judgment in favor of the Lockes.

## 2. Duty

The Lockes' motion for summary judgment stated, "Owners and occupiers have no common law duty to maintain their property so as to ensure that travelers of an abutting highway have an unobstructed view of intersections," and that the drivers' conduct constituted "intervening causes" of the accident. Mr. Driggers' response was a simple denial of both allegations. The order granting summary judgment did not specify the basis, but we must conclude the Trial Court agreed there was no duty on the part of the landowners. Otherwise, there would have obviously been questions of fact to be decided with respect to causation, and summary judgment would have been inappropriate. Ark. R. Civ. P. 56(c).

■ The question of whether a duty is owed is always a question of law. *First Commercial Trust Co.* v. *Lorcin Eng'g*, 321 Ark. 210, 900 S.W.2d 202 (1995). If the Lockes had a duty to maintain the bushes on their land in such a way as not to obscure the vision of motorists approaching the intersection, then

questions of negligence involving issues of fact were presented to the Trial Court. If there was no such duty, summary judgment was appropriate.

In *Ben M. Hogan & Co.* v. *Krug,* 234 Ark. 280, 351 S.W.2d 451 (1961), the plaintiffs were the driver and occupants of a car which struck a gravel truck when the truck exited property leased by Ben M. Hogan & Co. (Hogan) after obtaining a load of gravel from Hogan. The plaintiffs sued the owner and driver of the truck as well as Hogan. The complaint against Hogan alleged numerous acts of negligence including an allegation that Hogan was negligent in:

> The assembling and maintaining of a stockpile of gravel 25 feet high and 35 feet wide . . . which completely obstructed and cut off the view of the appellee and prevented her from seeing the . . . truck; that Hogan had failed to cut and remove trees, bushes and vines which had grown on the leased property of the appellant [Hogan] in such a manner that it had obstructed the appellee's view . . . and prevented her from seeing the . . . truck . . . .

The bulk of our opinion dealt with an explanation that the piling of the gravel was not a negligent act and that the actions of the drivers of the vehicles involved in the collision amounted to intervening causes of the injuries. In conclusion, however, we said:

> The gravel pile was merely one of the conditions or surrounding circumstances that were present at the time of the accident. It was one of the "circumstances" to be considered in applying the rule of reasonable care "under the circumstances" in determining the fault or lack of it on the part of the drivers of the vehicles involved. It was no more a "cause" of the accident than was any of the other conditions present, such as: the underbrush and trees which obscured the view—the dirt and gravel road with less traction for stopping than one of a different material—the hill which did not allow an adequate view down the road—the great distance from the bumper to the windshield of the truck which prevented the driver from seeing down the road without pulling out on it. Certainly we are not going to hold liable every property owner who

has a tree alongside the road—the city, county, or state for not providing the most efficient road surfacing material—the city, county, or state for failing to level all hills or straighten out all curves—and manufacturers of vehicles for not shortening truck noses.

The location of the gravel pile and all of these things to which we make reference here are circumstances that should have been considered by [the owner and driver of the truck] . . . in applying the rule of reasonable care.

We held a verdict should have been directed in favor of Hogan.

The parties now before us offer, quite understandably, differing interpretations of the *Ben M. Hogan & Co.* opinion. Mr. Driggers sees it as one which "turned entirely on the law of proximate cause as it existed in 1961" and argues the law has changed to permit his claim. The Lockes contend the holding' was that Hogan could not have been negligent because it owed no duty to passing motorists not to erect or maintain on its property items which would obstruct their view. There would have been no need for the discussion of intervening causation if we had concluded Hogan had no duty to the drivers. On the other hand, our language referring to Hogan's gravel pile, vines, brush, etc., as "circumstances" which had to be taken into consideration by the drivers supports the conclusion that Hogan owed no duty to them.

■ In his brief, Mr. Driggers acknowledges that "there is no common law duty imposed upon a landowner to control the vegetation on his property for the benefit of users of a public highway," quoting *Krotz* v. *CSX Corp.,* 115 A.D.2d 310, 496 N.Y.S.2d 190 (A.D.4 Dept. 1985). *See* William J. Appel, *Annotation, Liability of Private Landowner for Vegetation Obscuring View at Highway or Street Intersection,* 69 A.L.R.4th 1092 (1989). But he cites other cases from other jurisdictions which he purports to have rejected the common law rule, and contends the number of states which follow it is "shrinking."

Mr. Driggers' primary citation in support of the trend he sees away from the common law rule is *Sprecher* v. *Adamson,* 30 Cal.3d 358, 178 Cal. Rptr. 783, 636 P.2d 1121 (1981). There the California Supreme Court does, as Mr. Driggers says,

point out that some 13 jurisdictions have held a landowner liable for a natural, as opposed to artificial, condition resulting in injury to a person or property off the landowner's premises. The cases are not helpful here, however. The *Sprecher* case involved a natural landslide which physically injured a neighbor's property. It was held that the owner of the land had a duty to take reasonable actions to check the landslide. The California Court noted that all the cases from the other 13 jurisdictions had to do with trees falling off the landowners' premises. Those cases are nothing new, and they comport with the view expressed in the Restatement (Second), Torts, § 363(2), which states, "A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." Comment *e.* to that section makes it clear that the danger contemplated is that resulting not from the presence of the trees but from their condition, *i.e.,* the probability that they may break and fall on the highway. *See also Prosser and Keeton on Torts*, § 57 (5th ed. 1984).

There are cases which have held a landowner liable for obstructing the view of motorists. Mr. Driggers cites a reported decision of a Delaware trial court denying summary judgment on the ground that there is such a duty. A defendant in possession of the land had planted corn up to the shoulder of a rural road at an intersection. As one basis of possible liability, the Court held in favor of the plaintiff with respect to the claim that a covenant specifically restricting those in possession of the land from obstructing the view of the roadway was binding. With respect to the duty, generally, the Court denied the summary judgment motion of the possessor of the land on which the corn grew, citing Restatement (Second) of Torts, § 371. Restatement § 371 provides that:

> A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place.

We have some doubts about the propriety of citing that section in support of a duty not to obscure view because the illustrative examples provided in the accompanying comment *b*. all have to do with the activity of burning something on the land and causing smoke to invade the highway. Another reservation we would have about relying on this case in support of departing from the common law rule is that the Court's opinion does not mention the rule. We have no way of knowing if it was even argued in the case.

Mr. Driggers also cites decisions from courts of appeals in which the duty in question was found to exist, but in none of them was there a discussion or specific rejection of the acknowledged common law rule to the contrary. *See Wright* v. *Travelers Ins. Co.,* 288 So.2d 374 (La. App. 1974); *Hamric* v. *Kansas City So. Ry. Co.,* 718 S.W.2d 916 (Tex. App. 1986); *Harvey* v. *Hansen,* 445 A.2d 1228 (Pa. Sup. 1982). Perhaps the most persuasive of these cases is *Langen* v. *Rushton,* 360 N.W.2d 270 (Mich. App. 1985), in which the Court said, "We cannot subscribe to a rule of law which would relieve the modern urban landowner from responsibility for foreseeable consequences caused by activity which poses an unreasonable risk of harm." The case involved alleged liability of the owner of a shopping center for maintaining a tree obscuring the view of drivers exiting the parking lot. There again, however, the authority cited was Restatement § 363, which we do not, as mentioned above, consider to be applicable.

The policy reasons in favor of the common law rule have been stated in terms of the unreasonableness of the burden placed on landowners to know when vegetation may be such as to cause a hazard to motorists and to trim or remove the vegetation in a manner so as to remove the hazard. In *Pyne* v. *Witmer,* 512 N.E.2d 993 (Ill. App. 2 Dist. 1987), the Illinois Appellate Court held that Illinois statutes dealing with nuisances created by landowners imposed no duty to control foliage in such a manner as to not impede the view of motorists at intersections. The Court concluded, in response to the allegation of a common law duty, as follows:

> . . .we conclude, in the absence of a statutory directive to the contrary, that there is no duty in Illinois on a land-

owner to remove foliage on his property so that motorists approaching an intersection can see other intersecting motorists. Considering the burden such a duty would impose on private property owners, we leave the imposition of such a duty to the legislature.

This same sort of policy balancing occurred in *Fritz* v. *Parkison*, 397 N.W.2d 714 (Iowa 1986), in which the Iowa Supreme Court considered whether a landowner had a duty to remove trees which obscured the view of motorists rounding a curve in the highway. Here are some of the Court's remarks:

> While Norton's trees may have required drivers to proceed with some additional degree of caution, the trees could not reasonably have been expected to pose any significant threat to motorists operating their vehicles in a reasonably prudent manner, and clearly could not be characterized as an unexpected occurrence like a falling limb or a gaggle of geese.
>
> ***
>
> Ordinarily a landowner in Norton's position would have no expertise in determining what does or does not constitute sufficient visibility or in concluding what steps would be required to select offending trees.

The Court, after mentioning a public policy favoring the planting of trees and considering the costs to landowners of attempts to assure appropriate visibility for motorists and the uncertainty they would have to endure, concluded that "the county and the motorists are in a much better position to take precautions sufficient to minimize any danger."

No doubt cities, counties, and states can purchase rights of way sufficient to allow for foliage removal in connection with the maintenance of safe curves, intersections, and road shoulders, applying the expertise necessary to see to their safety. Like the Iowa Court, we decline to reject the common law rule or, absent legislation to the contrary, place the burden of public safety on those whose properties abut public streets and highways.

Affirmed.

DUDLEY and GLAZE, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. Plaintiff Bob Driggers filed this tort suit against codefendants Buddy Neal and Ken and Louann Locke. In his complaint, plaintiff alleged that he was driving his vehicle north on Tenth Street in Arkadelphia and, while crossing the intersection of Tenth and Main, defendant Buddy Neal negligently drove his vehicle into plaintiff's vehicle, and as a result, plaintiff suffered damages. In the same complaint, plaintiff alleged that defendants Ken and Louann Locke negligently allowed a "hedge row of holly bushes and other shrubs" to "extend out to such a distance that requires vehicles traveling north on Tenth Street to actually enter the intersection of Tenth and Main before traffic traveling east on Main Street can be seen" and that their negligence was a concurrent proximate cause of plaintiff's damages.

Defendants Ken and Louann Locke moved for summary judgment on the ground that landowners have no duty to maintain their property so that motorists have an unobstructed view of intersections. The trial court granted summary judgment. The majority opinion holds that a possessor of land can, with impunity, allow holly bushes and other shrubs to grow to such height and size that they obstruct the view of motorists. I dissent.

The question of whether a duty is owed between parties is a matter of law. *Van Houten* v. *Pritchard*, 315 Ark. 688, 870 S.W.2d 377 (1994). In general, it is the duty of all persons to use ordinary care for their own safety and the safety of others, unless a statute or rule of law provides otherwise. *See* W. Page Keeton *et al.*, *Prosser & Keeton on the Law of Torts* § 53 (5th ed. 1984). The inquiry then becomes whether the law provides that a possessor of land is immune from liability for injuries caused by his or her lack of ordinary care in maintaining holly bushes and other shrubs.

## A. Arkansas Case

The only Arkansas case that discusses even a part of the issue in this case is *Ben M. Hogan Co.* v. *Krug*, 234 Ark. 280, 351 S.W.2d 451 (1961). The majority opinion tacitly admits that case does not expressly exempt a possessor of land from the duty to exercise ordinary care in the maintenance of land. Thus, there

is no law providing immunity for a possessor of land who allows ornamental shrubs to grow so that they block the vision of motorists. The holding of this court then should be that the possessor of land has a duty to exercise ordinary care of land so that ornamental shrubs do not obstruct the vision of motorists.

Further, the cited case actually supports this dissent. In that case we held that the circuit court erred in denying the defendant landowner's motion for summary judgment because the defendant's maintenance of a gravel pile was not negligent and was not the proximate cause of plaintiff's injuries even though the pile obstructed the view of drivers at an intersection. Negligence and intervening cause were issues only because a duty was owed to motorists. In the case we wrote:

> That brings us to a consideration as to whether or not the appellant was negligent in maintaining on its property a gravel pile which it is alleged obscured the vision of the appellee as she drove the car toward the intersection of the haul road and the County Line Road where the accident occurred. This lessening of her sight distance by the gravel pile and the presence of growth of various kinds is alleged by the appellees to have brought about the accident.

> The piling of the gravel on his own property by Hogan was not of itself negligent and the only time that the gravel itself could have brought about an injury would have been if Hogan had negligently piled it on the County Road in such a way that a car might strike it or had it been stacked so close to the County Road that part of it had sloughed off and damaged vehicles or persons on the County Road. So far as the gravel piling is concerned, it could have remained in that spot at that height indefinitely without causing any damage. Therefore it cannot in any way be said that the gravel pile was of itself the proximate cause of the injuries of which the appellees complain.

*Id.* at 284, 351 S.W.2d at 453.

We then discussed proximate cause and articulated the applicable rule as follows:

> [T]he rule is that the injury must be the natural and probable consequence of the act — such a consequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act; the act must, in a natural and continuous sequence, *unbroken by any new cause, operate as an efficient cause of the injury.*

*Id.* at 285, 351 S.W.2d at 453-54 (quoting Comment, *Torts — Proximate Cause — Intervening Force,* 1 Ark. L. Rev. 148, 152 (1947) (emphasis supplied by the court)). We concluded the opinion by holding that the hauling of gravel by a third person and the operation of the truck and trailer by that third party intervened and were sufficient to stand as the cause of the injury. Again, we would not have discussed negligence and proximate cause if there were no duty.

In summary, the general rule is that one has a duty to use ordinary care for his or her own safety and for the safety of others, unless a statute or rule of law provides otherwise. Neither of the parties nor the majority opinion cites a statute or rule of law of this State providing immunity to the landowner. The general rule should apply, and the possessors of the land should be held to have owed a duty to maintain the ornamental shrubs so that they did not obstruct the vision of motorists.

### B. Law of Other Jurisdictions

The traditional common-law rule is that the possessor of land is under no affirmative duty to remedy conditions of *purely natural origin* upon his land. *Nichols* v. *Sitko,* 510 N.E.2d 971 (Ill. App. 1987); *Evans* v. *Southern Holding Corp.,* 391 So. 2d 231, *rev. denied,* 399 So. 2d 1142 (Fla. Dist. Ct. App. 1981); W. Page Keeton *et al., Prosser & Keeton on the Law of Torts,* § 57 (5th ed. 1984); William J. Appel, Annotation, *Liability of Private Landowner for Vegetation Obscuring View at Highway or Street Intersection,* 69 A.L.R.4th 1092 (1989). The term "natural condition" of land means a condition that is not in any way the result of human activity. *See* Restatement (Second) of Torts § 840(1) cmt. a (1979); *see generally Prosser, supra*; Restatement (Second) of Torts § 363 (1965). Ornamental shrubs are the result of human activity.

The nonliability for failure to remedy natural conditions "originated in times when much land remained uncleared and any duty placed upon a landowner to cut or remove vegetation on his property would have been an onerous one." William J. Appel, Annotation, *Liability of Private Landowner For Vegetation Obscuring View at Highway or Street Intersection*, 69 A.L.R.4th at 1098. Historically, the consideration most frequently invoked to support the rule of nonliability for natural conditions was that it was merely an embodiment of the principle that one should not be obligated to undertake affirmative conduct to aid or protect others. *Sprecher v. Adamson Cos.*, 636 P.2d 1121 (Cal. 1981); Restatement (Second) of Torts, § 314 (1965); *see generally*, James, *Scope of Duty in Negligence Cases* 47 Nw. U. L. Rev. 778, 800-09 (1953); Dix W. Noel, *Nuisances from Land in Its Natural Condition*, 56 Harv. L. Rev. 772, 796-97, and n.102 (1943). This rule rested on the common law distinction between the infliction of harm and the failure to prevent it, or misfeasance and nonfeasance. Misfeasance was determined to exist when a defendant played some part in the creation of a risk. Nonfeasance occurred when a defendant failed to intervene on a plaintiff's behalf. *Sprecher v. Adamson Cos.*, 636 P.2d 1121 (Cal. 1981).

Proponents of the rule of nonliability for natural conditions argued that a defendant's failure to prevent a natural condition from causing harm was mere nonfeasance. A natural condition of the land was by definition, they argued, one which no human being had played a part in creating. *Sprecher v. Adamson Cos.*, 636 P.2d at 1122; *see* Dix W. Noel, *Nuisances from Land in Its Natural Condition*, 56 Harv. L. Rev. at 773. Therefore, no basis for liability existed because a duty to exercise reasonable care could not arise out of possession alone. Since there was no special relationship between the possessor of land and persons outside the premises, there could be no liability. *See* Restatement (Second) of Torts, § 314, cmt. f (1965).

Conversely, a defendant's failure to prevent an artificial condition from causing harm constituted actionable misfeasance. *Sprecher v. Adamson Cos.*, 636 P.2d at 1126. Thus, the general rule has always been that a defendant has a duty to prevent an artificial condition from causing harm. The Restatement of Torts, in the material section, states this general rule as follows:

§ 364. Creation or Maintenance of Dangerous Artificial Conditions.

A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if

(a) the possessor has created the condition, or

(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or

(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it.

Restatement (Second) of Torts § 364 (1965).

The general rule is that one owes a duty of ordinary care for the safety of others, unless a statute or rule of law provides otherwise. No statute or rule of law provides immunity for a possessor of land who maintains an artificial condition on his or her land. The holding in this case should be that the defendant possessors of land are not immune.

The majority opinion circumvents the issue in part because it discusses at length cases that involve purely natural conditions. That is not the condition that is before us. It simply is not necessary for us to decide whether to follow those states and the District of Columbia that apply ordinary negligence principles in determining a possessor's liability for harm caused by a natural condition. *See Sprecher* v. *Adamson Cos.*, 636 P.2d 1121 (Cal. 1981), listing thirteen jurisdictions following that rule. Similarly, it is not necessary for us to decide whether to follow other jurisdictions that have begun applying ordinary negligence principles only in urban locations. *See* Restatement (Second) of Torts, § 363(2) and cmt. a (1965). We need only decide the case before us, and it involves maintenance of ornamental shrubs in an urban location.

## C. Public Policy

In determining whether a duty exists, a court should consider the forseeability of harm, the degree of certainty of damages, the closeness of connection between defendant's conduct and the damage, the moral blame for the conduct, who could have best prevented the damage, the policy of preventing future damage, and the overall consequences to the state for imposing a duty. The motor vehicle is deeply involved in today's society, transportation, and economy. Automobile accidents result in a tremendous amount of pain and suffering and enormous expenses for medical care and property losses. It is manifest that sound public policy is to prevent the causes of automobile accidents whenever reasonable and practical. This policy dictates that roadways should be free from artificial hazards and that a possessor of land should be liable to motorists when he or she fails to exercise ordinary care in maintaining artificial conditions. The possessor of land can easily foresee that if he or she allows ornamental shrubs to obstruct the vision of motorists, the result can be car wrecks and the resulting injuries and damages. The connection is close, and the possessor of the land is the only one who can prevent the injury and damages. The correct public policy is obvious.

The public policy solution proposed in the majority opinion requiring cities, counties, and states to purchase rights of way sufficient to allow for removal of shrubbery foliage simply misses the mark. The reasonable, sensible, fair and just solution is to place the duty on the party who can prevent the accident.

The majority opinion refuses to place the duty where it belongs. Perhaps the members of the General Assembly and the members of the city councils will recognize where the duty should be, and perhaps they will pass laws that prevent a possessor of land from maintaining holly bushes and other ornamental shrubs that obstruct the view of motorists.

I dissent.

Tom Glaze, Justice, dissenting. I respectfully dissent. I strongly disagree with this court's attempt to distinguish the recent case of *Haile* v. *Arkansas Power & Light Co.*, 322 Ark. 29, 907 S.W.2d 122 (1995). As I understand the majority opin-

ion, it states the *Haile* case involved a nonsuit of one of several claims against a party and the party nonsuiting intended later to refile the nonsuited claim, giving rise to possible piecemeal appeals. The majority opinion then relates that the rationale causing dismissal in cases of nonsuiting one of multiple *claims* against a single party (like in *Haile*) differs from the case (like the present one) dismissing one of multiple *parties*. This suggested difference is based on the fact that, where a plaintiff has a number of claims against a single party, the doctrine of *res judicata* will bar issues which could have been litigated between them but were not. On the other hand, where the dismissal of one of multiple parties occurs, the majority suggests the dismissal leaves all parties in the same positions, since nothing requires a plaintiff to sue the prospective defendants simultaneously.

My reluctance to join the majority court's rationale and distinction between nonsuiting one claim of multiple claims from one party of multiple parties in the context of Rule 54(b) is the court's failure to recognize that plaintiffs *must* often sue and join all party defendants in one lawsuit. *See* Ark. Civ. P. Rule 19(a) and *Yamauchi* v. *Bank/Central South*, 309 Ark. 532, 832 S.W.2d 241 (1992). In addition and most important, I point out that this court has held that the fundamental policy of Rule 54(b) is to avoid piecemeal appeals and that an order of dismissal of *one party or one claim* from a multi-party, multi-claim lawsuit may be granted when the trial court directs the entry of a final judgment as to one or more of the *claims or parties* and makes express findings that there is no just reason to delay the appeal. *General Motors Acceptance Corp.* v. *Eubanks*, 318 Ark. 640, 887 S.W.2d 292 (1994). Here, the appellant failed to produce a record on appeal showing the jurisdictional requirements of Rule 54(b). In sum, today's majority decision simply ignores the simple language of Rule 54(b).

All things considered, I believe the distinction that the majority court attempts to draw between dismissing claims and parties in the Rule 54(b) context will be confusing and difficult to apply in future cases. Accordingly, I believe this case is controlled by Rule 54(b) and should be dismissed, as was done in *Haile*. A litigant's attempt to nonsuit parties and claims to obtain a final order circumvents the intent and dictates of Rule 54(b) and should not be condoned. I would add that, while this

Rule 54(b) and jurisdiction issue was not joined in the *Bryant* case, I think we erred there in accepting jurisdiction and proceeding to rule on the merits of the case.