526 So.2d 678 (1988)
BAILEY DRAINAGE DISTRICT, Petitioner,
v.
Evelyn STARK, etc., Respondent.
BROWARD COUNTY, Petitioner,
v.
Evelyn STARK, etc., Respondent.
Nos. 70543, 70691.
Supreme Court of Florida.
April 28, 1988.
Rehearings Denied July 11, 1988.
*679 Harry S. Raleigh, Jr. and Bryan Duke of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, and Susan F. Delegal, Gen. Counsel, Alexander Cocalis, Chief Trial Counsel and Barbara A. Hall, Asst. Gen. Counsel, Broward County, Fort Lauderdale, for petitioners.
Michael D. Stewart of Michael D. Stewart, P.A., Fort Lauderdale, for respondent.
Richard A. Barnett of Barnett & Hammer, P.A., Hollywood, amicus curiae for The Academy of Florida Trial Lawyers.
William J. Roberts and Michael Egan of Roberts, Egan & Routa, P.A., Tallahassee, amicus curiae for Florida Ass'n of Counties.
PER CURIAM.
This cause is before the Court on petitions to review Stark v. Bailey Drainage District, 505 So.2d 566 (Fla. 4th DCA 1987), in which the Fourth District Court of Appeal certified a question of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
On August 20, 1984, Stephen Stark was traveling east on Southwest 52nd Court. He was killed when his vehicle was struck by a truck traveling north on Southwest 178th Avenue as he passed through the intersection. The intersection had no traffic control devices. The intersection is located within the boundaries of the Bailey Drainage District in rural unincorporated Broward County, both of which are political subdivisions of the State of Florida.
Evelyn Stark, as personal representative of the estate of Stephen Stark, filed suit against the petitioners, Broward County and the Bailey Drainage District, alleging that the decedent's view of the intersection *680 was impeded by plant growth on the sides of the road which created a danger not apparent to eastbound motorists on Southwest 52nd Court and that both entities failed to provide proper signs or other traffic control devices to warn of the danger. The complaint also alleges that the governmental entities had previously kept the plant growth on the sides of the road trimmed and that both had knowledge of the dangerous condition. The trial court granted the petitioners' motions for summary judgment on the ground that Stark's claim was barred by the doctrine of sovereign immunity because the dangerous condition complained of, if in fact the condition was dangerous, was not created by either Broward County or the Bailey Drainage District. On appeal, the Fourth District Court of Appeal reversed on the basis of Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982), holding that "there is proof that a known dangerous condition was maintained by [petitioners] without proper warnings, thereby precluding summary judgment in the [petitioners'] favor." 505 So.2d at 567. The Fourth District certified the following question:
DOES SOVEREIGN IMMUNITY BAR AN ACTION AGAINST A GOVERNMENTAL ENTITY FOR FAILING TO WARN MOTORISTS OF AN INTERSECTION KNOWN BY THE GOVERNMENT TO BE DANGEROUS BY REASON OF THE LACK OF TRAFFIC CONTROL DEVICES AND OBSTRUCTIONS TO VISIBILITY LOCATED ON THE RIGHT-OF-WAY?
In Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), this Court established that discretionary, judgmental, planning-level decisions were immune from suit, but that operational-level decisions were not immune. We held, in applying these principles to the facts in Commercial Carrier, that the failure to properly maintain an existing traffic control device was an operational decision and suit could be filed against the governmental entity.
Later in Neilson, we were again faced with interpreting the "operational-level" as distinguished from "judgmental, planning-level" functions of government as discussed in Commercial Carrier. Specifically, Neilson involved the issue of whether the initial failure to install traffic control devices at an intersection may constitute an omission or negligent act which subjects governmental entities to liability. We answered the question in the negative, holding that decisions relating to the installation of appropriate traffic control methods and devices and the decision to build or change a road, together with all the determinations inherent in such decisions, are of the judgmental, planning-level type. 419 So.2d at 1077.[1]
We have also recognized, however, that even though "defects inherent in the overall plan for an improvement, as approved by a governmental entity, are not matters that in and of themselves subject the entity to liability," liability may arise from a planning-level decision when that decision creates a hidden trap. City of St. Petersburg v. Collom, 419 So.2d 1082, 1085 (Fla. 1982). As we stated in Collom:
[O]nce a governmental entity creates a known dangerous condition which may not be readily apparent to one who could be injured by the condition, and the governmental entity has knowledge of the presence of people likely to be injured, then the governmental entity must take steps to avert the danger or properly warn persons who may be injured by that danger. The failure of government to act in this type of circumstance is, in our view, a failure at the operational level.
*681 Id. at 1086 (citation and footnote omitted).[2] Likewise, we said in Payne v. Broward County, 461 So.2d 63, 66 (Fla. 1984):
The decision whether to install a traffic control light at an intersection is a planning decision clothed with immunity, but that decision carries with it the concomitant duty to warn until such time as the light is operational if the absence of such traffic light creates a trap or creates a known danger not readily apparent to the persons in or about the intersection.[[3]]
We note that the failure to regulate traffic at an intersection by posting signs or other means does not in and of itself give rise to an actionable breach of duty. Neilson. Likewise, the existence of an obstructed view of traffic at an intersection does not in and of itself give rise to liability. We hold, however, and in response to the certified question, sovereign immunity does not bar an action against a governmental entity for rendering an intersection dangerous by reason of obstructions to visibility if the danger is hidden or presents a trap and the governmental entity has knowledge of the danger but fails to warn motorists. Where a governmental entity knowingly maintains an intersection right-of-way which dangerously obstructs the vision of motorists using the street in a manner not readily apparent to motorists, it is under a duty to warn of the danger or make safe the dangerous condition. See Duval County School Bd. v. Dutko, 483 So.2d 492 (Fla. 1st DCA), review denied, 492 So.2d 1331 (1986). The failure to do so is a failure at the operational level.
We reject the contention that the petitioners cannot be liable because the brush and weeds were a naturally occurring condition, not planted by the petitioners. In Sarasota County v. Butler, 476 So.2d 216 (Fla. 2d DCA 1985), a nine-year-old child drowned at South Lido Beach. The complaint alleged that Sarasota County was negligent because it failed to post warnings signs or devices alerting beachgoers to the strong tides and currents and to the fact that the underlying lands contained drop-offs, conditions which rendered the swimming area dangerous. The district court directed that judgment be entered for Sarasota County because it was neither the beach nor the operation of it which caused the child's death, but the water and the drop-offs, which were naturally occurring conditions not created by the county. This Court quashed the district court's opinion, stating that "the public owner did not create the specific dangerous condition but did create a designated swimming area where the dangerous condition existed," Butler v. Sarasota County, 501 So.2d 579 (Fla. 1986), and that once it decided to operate a swimming facility, it assumed the common law duty to operate the facility safely. Likewise, although brush and weeds may be a naturally occurring condition not specifically created by a governmental entity, an entity responsible for maintaining an intersection has a duty to warn of or to make safe naturally occurring conditions which render an intersection dangerous when the conditions create a danger which is not readily apparent to motorists.
We also conclude that it is irrelevant whether the brush and weeds are actually located on the governmental entity's right-of-way or on privately owned property *682 adjacent to the right-of-way. The relevant inquiry is whether the brush and weeds, wherever located, obstruct the view of motorists, creating a danger which is not readily apparent. If the brush and weeds are located on the entity's right-of-way, the entity may either warn of the danger or remove the obstruction. If the brush and weeds are located on privately owned property so that removal is not an option, the entity still has a duty to warn of the danger.
Material questions of fact exist in the present case in regard to whether the intersection at issue presented a hidden danger or trap, created by either of the governmental entities, of which the responsible governmental entity had knowledge and yet failed to provide a warning, and whether such trap or hidden danger, if any, was the cause of the accident which resulted in the death of Stephen Stark. It therefore may not be said that petitioners are entitled to a judgment as a matter of law. See Fla.R.Civ.P. 1.510(c). Accordingly, we approve the result reached by the district court below reversing the trial court's entry of summary judgment in favor of petitioners.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, J., concurs specially with an opinion, in which SHAW, BARKETT and KOGAN, JJ., concur.
EHRLICH, Justice, specially concurring.
I concur because of the Court's opinion in Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982) and the doctrine of stare decisis.
Nonetheless, I continue to be of the view that when a governmental entity designs and constructs an intersection of a roadway which it knows to be dangerous, it must either install adequate traffic control signals and devices, or warn motorists that the intersection is hazardous, and if it fails to do either and such conduct proximately causes injuries to others, it should not be immune from suit. As I see it, the views of the dissent in Nielson are correct, but unfortunately it did not carry the day.
SHAW, BARKETT and KOGAN, JJ., concur.
NOTES
[1] We concluded that the Neilsons' complaint did not state a cause of action because the allegations concerned upgrading the intersection and installing traffic control devices rather than the duty of a governmental entity to warn of a dangerous intersection. We remanded with directions that the trial court allow the Neilsons an opportunity to amend their complaint to allege a known trap or dangerous condition for which there was no proper warning because of our clarification of the principles set forth in Commercial Carrier. 419 So.2d at 1079.
[2] To illustrate this principle, the following example was provided:

[I]f a governmental entity plans a road with a sharp curve which cannot be negotiated by an automobile traveling more than twenty-five miles per hour, the entity cannot be liable for building the road because the decision to do so is at the judgmental, planning level. If, however, the entity knows when it builds the road that automobiles cannot negotiate the curve at more than twenty-five miles per hour, then an operational-level duty arises to warn motorists of the hazard.
419 So.2d at 1086.
[3] In Payne, the decedent was killed when she was struck by a vehicle as she attempted to cross a street at midblock. We held that an action against the county was barred by sovereign immunity because the danger faced by the decedent was no greater than that facing any pedestrian seeking to cross any street at midblock. There was no hidden trap or danger; whatever danger there was in crossing the street midblock was open and obvious.