788 So.2d 210 (2001)
Ileana WHITT, etc., et al., Petitioners,
v.
Eli SILVERMAN, et al., Respondents.
No. SC95533.
Supreme Court of Florida.
May 3, 2001.
*212 Todd R. Schwartz of Ginsberg & Schwartz, Miami, FL; and Ratiner, Reyes & O'Shea, P.A., Miami, FL, for Petitioners.
Scott A. Cole and Helen Lee Miranda of Josephs, Jack & Gaebe, P.A., Miami, FL, for Respondents.
ANSTEAD, J.
We have for review Whitt v. Silverman,[1] 732 So.2d 1106 (Fla. 3d DCA 1999), based on express and direct conflict with the decision in McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), and decisions that have applied McCain.[2] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. At issue in this case is whether McCain's foreseeability analysis applies in determining whether a landowner operating a commercial gas station owes a duty of care to persons who may be injured as a result of natural conditions or landscaping on the landowner's property, but where the injury actually occurs off the property. Because we conclude that a strict rule absolving a landowner of responsibility under the circumstances presented here conflicts with our analysis in McCain, we quash the ruling below.

FACTS AND PROCEEDINGS TO DATE
The essential facts are described by the Third District:
Defendant-appellees ("landowners") operate an Amoco service station on Collins Avenue on Miami Beach. While leaving the service station premises in her car, service station customer Jean Simoneau struck two pedestrians, killing one and injuring the other.

*213 Plaintiffs filed this personal injury action against the landowners, among others. Plaintiffs allege that the landowners had a dense stand of foliage between their service station and the adjacent property. Plaintiffs say that the foliage impaired the driver's view of the sidewalk, thus causing or contributing to the accident. However, the foliage was entirely on the landowner's property, and did not protrude into the public way. The trial court dismissed plaintiffs' claims for negligence and violation of a Miami-Dade County ordinance.
Whitt, 732 So.2d at 1107-08 (footnotes omitted). The district court affirmed the dismissal of the common law negligence claim, but reversed the dismissal of the claim predicated upon the violation of a Miami-Dade County ordinance regulating foliage. See id. With respect to the negligence claim, the Third District acknowledged our ruling in McCain, but concluded that McCain did not apply, and that McCain had no effect on earlier cases absolving landowners of responsibility for any danger created by foliage growing on their property. See id. at 1108. The district court applied the reasoning of a line of accident cases barring liability for visual obstructions created by foliage growing on a landowner's property that did not protrude onto the public way. See id. The holding relied upon the so-called "agrarian rule," which provides that a "landowner has a right to use and enjoy his property in any manner he sees fit." Id. (quoting Morales v. Costa, 427 So.2d 297, 298 (Fla. 3d DCA 1983)).[3]

LAW AND ANALYSIS
While we conclude that the district court's application of a rule of no liability under the circumstances presented is inconsistent with our analysis in McCain, we must acknowledge there is a distinct lack of unanimity throughout the country regarding the appropriate duty, if any, that should be imposed on a landowner for visual obstructions of an adjoining roadway caused by the location of foliage on the landowner's property. See Kolba v. Kusznier, 252 N.J.Super. 53, 599 A.2d 194, 196 (Law Div.1991). Many jurisdictions have imposed a reasonable duty of care on landowners, similar to the rule announced in McCain, while others have continued to apply an absolute rule of no liability for such conditions. We conclude that the application of an absolute rule under the circumstances presented here is inconsistent with our prevailing negligence law and modern conditions.

AGRARIAN RULE
The so-called "agrarian rule" provides that a landowner owes no duty to persons who are not on the landowner's property and therefore a landowner is not responsible for any harm caused to them by natural conditions on the land. See Restatement (Second) of Torts § 363(a) (1965); 5 Fowler V. Harper et al., The Law of Torts § 27.19, at 308-09 (2d ed. 1986 & Supp.1991); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 57, at 390 (5th ed. 1984 & Supp.1988). Commentators trace the ancient origins of this rule to times when much land was unsettled or uncultivated, and the burden of inspecting it and putting it in a safe condition by the owner would have been unduly onerous and out of all proportion to any harm likely to result. See Keeton et al., supra, § 57, at 390; see also Evans v. Southern Holding Corp., 391 So.2d 231, *214 233 (Fla. 3d DCA 1980) (Schwartz, J., dissenting) (citing Roberts v. Harrison, 101 Ga. 773, 28 S.E. 995 (1897)). The rule was predicated upon a perceived public policy that "a landowner has a right to use and enjoy his property in any manner he sees fit." Morales v. Costa, 427 So.2d 297, 298 (Fla. 3d DCA 1983).[4] Early supporters of the rule also reasoned that because a natural condition is by definition one which no human being created, a landowner was free from any duty to change or maintain it in order to prevent harm.[5]See Sprecher v. Adamson Companies, 30 Cal.3d 358, 178 Cal.Rptr. 783, 636 P.2d 1121, 1125 (1981).
Despite its dated origins, many courts have continued to apply the agrarian rule to bar actions in changed conditions, including those based on claims that natural or artificial conditions on a landowner's private property constituted an unsafe condition and obstructed the view of motorists.[6] One rationale for adhering to the *215 rule in these cases has been that motorists are in a better position to prevent accidents than landowners, and thus motorists, rather than landowners, should be charged with the duty to anticipate and avoid such accidents. See, e.g., Bassett v. Edwards, 158 Fla. 848, 30 So.2d 374, 376 (1947) (holding it was the duty of both drivers to observe foliage at an intersection and to operate their vehicles as required under prevailing conditions because every user of a highway is required to exercise reasonable care for his own safety and protection).
The traditional rule was initially developed and applied only to natural conditions on a landowner's property, and not to artificial ones created by the landowner.[7] Consistent with that distinction, for example, the authors of sections 364 and 368 respectively of the Restatement (Second) of Torts would impose a duty on landowners for injuries to persons and travelers on adjacent lands and highways caused by the placement of artificial conditions on a landowner's property.[8] However, some courts have criticized attempts to construct a rule of liability predicated solely upon the distinction between artificial and natural conditions. See, e.g., Sterling v. Weinstein, 75 A.2d 144, 147 (D.C.1950); Mahurin, 28 Ill.Dec. 356, 390 N.E.2d at 524 (Ill.App. 1979); Hasapopoulos v. Murphy, 689 S.W.2d 118 (Mo.Ct.App.1985); Rowe v. McGee, 5 N.C.App. 60, 168 S.E.2d 77, 79 (N.C.Ct.App.1969); Harvey v. Hansen, 299 Pa.Super. 474, 445 A.2d 1228, 1231 (1982).

URBAN V. RURAL LANDS
Courts have also drawn a distinction in application of the "agrarian rule" based on *216 location of the property in an urban or rural setting. These courts have reasoned that adhering to a no liability rule may be appropriate in rural areas, although there is no valid basis for its continued use in urban and other developed areas where artificial landscaping or other conditions may be more likely to impact traffic safety. See Mahurin, 71 Ill.App.3d at 692-93, 28 Ill.Dec. 356, 390 N.E.2d 523; Hasapopoulos, 689 S.W.2d at 120; Barker v. Brown, 236 Pa.Super. 75, 340 A.2d 566, 569 (1975). These decisions are reflected in the views of the Restatement where section 363(1) of the Restatement (Second) of Torts recognizes the traditional rule of no liability,[9] while section 363(2) imposes a duty on possessors of land in urban areas. Specifically, section 363(2) provides: "A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk arising from the condition of trees on the land near the highway."[10] Several courts have expressly adopted section 363(2). See, e.g., Valinet v. Eskew, 574 N.E.2d 283, 285 (Ind.1991) ("We agree that the differing duties placed on owners of land with respect to differing demographics [referring to the urban/rural distinction] is correct. We therefore adopt § 363 of the RESTATEMENT."); see also Zapata v. Kariyaparambil, 1997 WL 566222, at *3.

McCAIN v. FLORIDA POWER
In contrast to the rather narrow focus of the so-called agrarian rule, this Court in McCain attempted to restate the general principles of negligence law and clarify the role that foreseeability plays in evaluating the duty and proximate cause elements of a common law negligence claim. In this context, we noted that although foreseeability relates to both duty and proximate cause, it does so in different ways:
The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others. The proximate causation element, on the other hand, is concerned with whether and to what extent *217 the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former is a minimal threshold legal requirement for opening the courthouse doors, whereas the latter is part of the much more specific factual requirement that must be proved to win the case once the courthouse doors are open. As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven.
McCain, 593 So.2d at 502-03 (citations omitted) (footnote omitted). On the question of duty, we explained:
Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. As we have stated:
Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.
Id. at 503 (footnote omitted) (quoting Kaisner v. Kolb, 543 So.2d 732, 735 (Fla.1989)) (alteration in original). The Court also noted that every risk need not be set out in a statute or by case law in order to give rise to a duty of care:
[E]ach defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element. For these same reasons, duty exists as a matter of law and is not a factual question for the jury to decide:
Duty is the standard of conduct given to the jury for gauging the defendant's factual conduct. As a corollary, the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.
Id. Finally, as to the element of proximate cause, we explained:
[F]oreseeability is concerned with the specific, narrow factual details of the case, not with the broader zone of risk the defendant created.
. . . .
Unlike in the "duty" context, the question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve. Thus, where reasonable persons could differ as to whether the facts establish proximate causationi.e., whether the specific injury was genuinely foreseeable or merely an improbable freakthen the resolution of the issue must be left to the fact-finder.
Id. at 503-04. We have subsequently applied our analysis in McCain to a variety of factual contexts. See, e.g., Springtree Properties, Inc. v. Hammond, 692 So.2d 164 (Fla.1997) (holding trial court erred in granting summary judgment in favor of restaurant owner in suit arising out of automobile accident in front of restaurant and issue of foreseeability should have been left to jury).
Importantly, subsequent decisions in accident cases resulting from visual obstructions to motorists have recognized and applied McCain's foreseeability analysis to determine whether the landowner owed a duty of care and whether that duty was breached in a particular instance. See Napoli v. Buchbinder, 685 So.2d 46, 47 (Fla. 4th DCA 1996) (holding that plaintiff's wrongful death action alleging that design *218 of parking lot and placement of stop sign which contributed to accident created a material question of fact as to whether defendant's alleged negligence placed plaintiff in a foreseeable zone of risk); Dykes v. City of Apalachicola, 645 So.2d 50 (Fla. 1st DCA 1994) (holding that the test to determine whether city was liable for trees and bushes which allegedly contributed to an accident was whether defendant's conduct created a "foreseeable zone of risk"). Hence, it appears that McCain has been applied in most instances as we intended, as a restatement of the law of negligence.

EVALUATION OF DUTY OF LANDOWNERS
Rather than strictly adhering to the agrarian rule, we note that some jurisdictions have applied an analysis similar to that set out in McCain in determining a defendant landowner's duty with respect to alleged obstructions to vision in place on a landowner's property. See Sprecher v. Adamson Cos., 30 Cal.3d 358, 178 Cal. Rptr. 783, 636 P.2d 1121, 1124 (1981) ("[T]he courts are moving toward jettisoning the common law rule in its entirety and replacing it with a single duty of reasonable care in the maintenance of property.") In fact, a review of Florida cases as well as those of other jurisdictions reflects a movement consistent with McCain toward imposing a duty on landowners in some circumstances for injuries caused by natural or artificial conditions by either creating exceptions to the no liability rule, see Evans v. Southern Holding Corp., 391 So.2d 231, 232 (Fla. 3d DCA 1980), or by completely abrogating it.

EVANS
In Evans, the majority opinion of the Third District refused to recognize a duty on the part of the landowners to maintain their property free of unsafe obstructions to the views of motorists and others who might be endangered by the obstructions.[11] In a dissenting opinion, Judge Schwartz challenged the majority's duty analysis:
In my judgment, the facts of this case raise a triable issue as to whether the defendant-landowner breached a duty of care which should be, and in fact has been, recognized by the law of Florida. That duty is the one referred to, albeit in a negative fashion, in Hardin v. Jacksonville Terminal Co., 128 Fla. 631, 175 So. 226 (1937), which is cited by the court. At 175 So. at 228, it was said:
there is no liability on the part of a landowner to persons injured outside his lands (which includes persons on adjacent highways), unless the owner has done or permitted something to occur on his lands which he realizes or should realize involves an unreasonable risk of harm to others outside his land, and therefore imposes on him, as an owner or possessor of the land, the duty of abating or obviating the use or condition from which the risk is encountered.

See, Cook v. Martin, 330 So.2d 498 (Fla. 4th DCA 1976), cert. denied, 339 So.2d 1170 (Fla.1976).
The majority suggests that the imposition of liability in this case would be improperly contrary to "the traditional rule that the owner of land is under no affirmative duty to remedy conditions of purely natural origin upon his land and impose upon a landowner for the benefit of motorists using a public street the *219 duty to maintain his property so that the motorist's view of intersecting traffic is not obstructed." I disagree with this position. In the first place, it was affirmatively alleged and demonstrated below that at least part of the obstruction to view was caused by the existence of "large trailers, vans, construction equipment, and outdoor toilets" near the intersection. If negligently created or permitted to exist, this decidedly non "purely natural" defect, see, 2 Restatement (Second) of Torts § 363 Comment b (1965), would give rise to liability under the firmly established principle embodied in 2 Restatement (Second) of Torts § 364 (1965):
Creation or Maintenance of Dangerous Artificial Conditions
A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if
(a) the possessor has created the condition, or
(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or
(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it. [note 1]
[note 1] It is significant that Hardin cites the original version of this section of the Restatement with approval. 175 So. at 227.
As to the "natural" condition caused by the growth of weeds, the supposed rule of non-liability is based upon a notion concerning the right to the unrestricted use of one's land which was founded upon conditions in an overwhelmingly agricultural society and which has therefore long outlived its raison d'etre. See, e.g., Roberts v. Harrison, 101 Ga. 773, 28 S.E. 995 (1897). I see no reason in modern-day life for a blanket rule of law insulating a landowner under all circumstances from responsibility for entirely foreseeable consequences, see, Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980), caused by a negligent failure to eliminate obstructions from his property. As several modern decisions have indicated, I would hold that, on the present record, a jury question has been presented on this theory of the case as well. See, Wisher v. Fowler, 7 Cal. App.3d 225, 86 Cal.Rptr. 582 (1970); Salomone v. Boulanger, 32 Conn.Supp. 115, 342 A.2d 61 (Super.Ct.1975); 2 Restatement (Second) of Torts s 363(2) (1965), and caveat and comment on subsection (2); compare, Rodgers v. Ray, 10 Ariz.App. 119, 457 P.2d 281 (1969), questioned in Hall v. Mertz, 14 Ariz.App. 24, 480 P.2d 361 (1971).
The Florida case cited by the court for its contrary conclusion, Bassett v. Edwards, 158 Fla. 848, 30 So.2d 374 (1947) does not involve an action against the landowner at all. More important, it embodies concepts of proximate causation, intervening cause, and contributory negligence which no longer obtain in our state. Gibson v. Avis Rent-A-Car System, Inc., supra; Hoffman v. Jones, 280 So.2d 431 (Fla.1973); see, Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979) (liability for intersection accident arising from negligent maintenance of traffic control device).

*220 Finally, the court states that reversal "entails the right in every intersectional collision case for the motorists to charge and litigate before a jury whether the jury thinks the landowner's use of his land is reasonable." So be it. Subject, as in every case, to appropriate superintendence by the court when there is no liability as a matter of law, the determination of whether reasonable care has been exercised in a specific situation is just what juries do and what, under our system, they are for. See, Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980). Every day, juries decide whether a landowner has negligently maintained his premises so as legally to cause injury to persons located on the property. I do not believe that the Republic would fall if they were allowed to make the same decisions as to persons on the adjoining highway.
Evans, 391 So.2d at 233-34 (Schwartz, J., dissenting). We conclude that the views expressed by Judge Schwartz are consistent with those we subsequently expressed in McCain and are helpful to our analysis of the issue presented to us today.
We note that other courts have sometimes applied the same McCainlike reasoning advocated by Judge Schwartz to certain motorist obstruction cases and imposed a corresponding duty on landowners under the particular circumstances presented. For instance, in Hamric v. Kansas City S. Ry., 718 S.W.2d 916 (Tex.Ct. App.1986), a case dealing with an obstructed view of both drivers as a result of tall and thick stands of weed growing on the side of the road, the court wrote: "We hold this case should be governed by the rule that the owner or occupier of premises abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of motorist[s] using the highway as a means of passage and the owner or occupier is liable for injuries that proximately resulted from his negligent acts in this respect." Id. at 918; see also Zapata v. Kariyaparambil, 1997 WL 566222, at *3 (applying same rule to landowners whose trees blocked the view of a stop sign and resulted in an accident).
Similarly, in Langen v. Rushton, 138 Mich.App. 672, 360 N.W.2d 270 (1984), the plaintiffs alleged that the owners of a shopping center had allowed various trees to grow on a median of the shopping center's entrance which obstructed the view of oncoming traffic and contributed to the accident at issue. Relying on the rule that landowners must maintain their land so as not to injure users of abutting streets, the court found it was "entirely foreseeable that a serious accident [could] occur between a customer entering or exiting from the parking lot and a highway motorist." Id. at 273. Therefore, the court concluded that "as a matter of law, defendant ha[d] a duty to the traveling public to provide motorists leaving its parking lot with an unobstructed view of oncoming traffic." Id. at 275. Again, in Ziemba v. Mierzwa, 142 Ill.2d 42, 153 Ill.Dec. 259, 566 N.E.2d 1365 (1991), the court applied a McCain analysis before ultimately concluding that a landowner owed no duty to maintain his property in such a manner that his driveway would be visible to travelers on an adjacent roadway. See Ziemba, 153 Ill. Dec. 259, 566 N.E.2d at 1368; see also Guy v. State, 438 A.2d 1250, 1255 (Del.Super. Ct.1981) (holding that in action where plaintiffs alleged that the condition of adjacent property interfered with the safety of travelers upon the roadway by allowing tall growths of vegetation to obstruct the view of an intersection, a question of fact arose as to whether the defendants realized or should have realized that planting corn up to the shoulder of the road would involve an unreasonable risk of harm).

*221 BAILEY DRAINAGE DISTRICT V. STARK

Interestingly, on at least one previous occasion, we have also rejected the contention that defendants should not be liable because the foliage obstructing a motorist's view were of natural origin. See Bailey Drainage District v. Stark, 526 So.2d 678 (Fla.1988). In Stark, the personal representative of the estate of the deceased motorist filed suit against Broward County and the Bailey Drainage District alleging that the motorist's' view at the intersection was impeded by plant growth (brush and weeds) on the sides of the road which obstructed the driver's vision. On appeal, this Court held that "[w]here a governmental entity knowingly maintains an intersection right-of-way which dangerously obstructs the vision of motorists using the street in a manner not readily apparent to motorists, it is under a duty to warn of the danger or make safe the dangerous condition." Id. at 681. As part of its analysis, the court wrote: "We reject the contention that the petitioners cannot be liable because the brush and weeds were a naturally occurring condition, not planted by the petitioners." Id. Moreover, the opinion concluded:
[I]t is irrelevant whether the brush and weeds are actually located on the governmental entity's right-of-way or on privately owned property adjacent to the right-of-way. The relevant inquiry is whether the brush and weeds, wherever located, obstruct the view of motorists, creating a danger which is not readily apparent.
Id. at 681-82. Although Stark dealt with a governmental entity's duty, it clearly reflects this Court's concern with the dangers that may inhere in the obstruction of a motorist's view and more importantly, our rejection of the view that no liability could arise simply because an obstruction is natural in character.

DUTY OF MOTORISTS
The landowner here asserts that if this Court recognizes any duty on his part, landowners will in essence be delegated the role of insurers for motorists using their adjoining roadways and that imposing this duty will relieve motorists of their established duty of care. However, as has been noted quite often, the imposition of a duty is nothing more than a threshold requirement that if satisfied, merely opens the "courthouse doors." McCain, 593 So.2d at 502. Once this duty is satisfied, an injured party must still prove the remaining elements of a negligence claim, including the much more specific proximate cause requirement. See Sprecher, 178 Cal.Rptr. 783, 636 P.2d at 1130 (Richardson, J., concurring) (agreeing to impose duty of care on landowners, yet recognizing that it would be exceedingly difficult to imagine how defendant could have corrected condition and therefore predicting defendant would most likely not be found liable). Hence, the burden remains with a claimant to establish the elements of a negligence claim against a defendant-landowner before being entitled to recover damages. Moreover, the imposition of a duty of care upon landowners will not relieve motorists of a duty because in Florida, even if a landowner breaches her duty of care, a plaintiff's award will be offset by the percentage of fault attributable to him in comparison to the fault of others, including the landowner. See Hoffman v. Jones, 280 So.2d 431 (Fla.1973). As pointedly noted by Judge Schwartz in Evans, jurors perform such tasks daily in tort cases. Evans, 391 So.2d at 234 (Schwartz, J., dissenting) (noting that "the determination of whether reasonable care has been exercised in a specific situation is *222 just what juries do and what, under our system, they are for").

CONCLUSION
Judge Schwartz' reasoning in Evans and our reasoning in McCain and Stark are consistent with the trend in other jurisdictions that conditions on a landowner's property resulting in injuries or damages to a plaintiff off the landowner's premises should be evaluated by the established principles of negligence law. See Napoli; Dykes. In accordance with that reasoning we agree that there is no justification for the rigid application of an absolute rule of no liability under circumstances like those presented here:
As to the "natural" condition caused by the growth of weeds, the supposed rule of non-liability is based upon a notion concerning the right to the unrestricted use of one's land which was founded upon conditions in an overwhelmingly agricultural society and which has therefore long outlived its raison d'etre. See, e.g., Roberts v. Harrison, 101 Ga. 773, 28 S.E. 995 (1897). I see no reason in modern-day life for a blanket rule of law insulating a landowner under all circumstances from responsibility for entirely foreseeable consequences, see, Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980), caused by a negligent failure to eliminate obstructions from his property. As several modern decisions have indicated, I would hold that, on the present record, a jury question has been presented on this theory of the case as well. See, Wisher v. Fowler, 7 Cal. App.3d 225, 86 Cal.Rptr. 582 (1970); Salomone v. Boulanger, 32 Conn.Supp. 115, 342 A.2d 61 (Super.Ct.1975); 2 Restatement (Second) of Torts § 363(2) (1965), and caveat and comment on subsection (2); compare, Rodgers v. Ray, 10 Ariz.App. 119, 457 P.2d 281 (1969), questioned in Hall v. Mertz, 14 Ariz.App. 24, 480 P.2d 361 (1971).
Evans, 391 So.2d at 233-34 (Schwartz, J., dissenting). We conclude that an inquiry as to the liability of a landowner under the circumstances presented here of a commercial business in an urban area specifically relying on the frequent coming and going of motor vehicles should be guided by a foreseeability analysis, which, as we have frequently stated, is governed by our pronouncements in McCain. In the instant case, the landowners were the owners of a commercial establishment, a service station, which by its very nature involves a continuous flow of traffic entering and exiting the premises for the commercial benefit of the landowners. In addition, it is undisputed that the landowners had exclusive control over the foliage and landscaping on the business premises, and it does not appear that it would have been unduly burdensome for the landowners to have maintained this foliage consistent with the safe egress and ingress of vehicles attracted to the business and persons affected thereby.
Accordingly, we conclude that under our analysis in McCain, the landowners' conduct here created a foreseeable zone of risk posing a general threat of harm toward the patrons of the business as well as those pedestrians and motorists using the abutting streets and sidewalks that would reasonably be affected by the traffic flow of the business. Notwithstanding this conclusion, of course, cases like this must be subjected to a factual determination of whether the landowners actually breached their duty under the particular circumstances and whether the accidental death or injury was a proximate result of any breach of that duty. In other words, although we conclude that the landowners had a duty of care, a discrete factual analysis and determination is required to determine the landowners' alleged responsibility in each case.
*223 For the forgoing reasons, we quash the decision of the district court of appeal and remand for further proceedings consistent herewith.
It is so ordered.
SHAW, HARDING, PARIENTE, LEWIS, and QUINCE, JJ., concur.
WELLS, C.J., dissents with an opinion.
WELLS, C.J., dissenting.
Although the majority view is appealing, I am concerned about the extensive exposure to liability which this decision will now cast upon all real property owners, including homeowners. This issue is further complicated by the necessity of apportionment under Fabre v. Marin, 623 So.2d 1182 (Fla.1993), which will now be involved in many more automobile cases.
I conclude that this situation is better addressed by county or municipal ordinance rather than by a change in the common law of negligence.
Therefore, I would affirm the district court's decision.
NOTES
[1] The Silvermans are the lessors of the property at issue in this case. Although they were part of the initial group of defendants, they settled with the plaintiffs during the pendency of the appeal below; therefore, they are no longer parties to the case.
[2] See Springtree Properties, Inc. v. Hammond, 692 So.2d 164 (Fla.1997); Napoli v. Buchbinder, 685 So.2d 46 (Fla. 4th DCA 1996); Dykes v. City of Apalachicola, 645 So.2d 50 (Fla. 1st DCA 1994).
[3] Notwithstanding this holding, the court remanded the case to the trial court as to the violation of the ordinance claim. The parties do not contest this part of the ruling by the district court in this review proceeding.
[4] Historically, another consideration cited in support of the rule has been the distinction between "action" and "inaction," or "misfeasance" and "nonfeasance." See Sprecher v. Adamson Companies, 30 Cal.3d 358, 178 Cal. Rptr. 783, 636 P.2d 1121, 1125 (1981) (citing Restatement (Second) of Torts § 314, and a traditional limitation of the liability of landowners only to persons who come upon the property). Misfeasance exists when a defendant contributes to the creation of the risk whereas nonfeasance arises when a defendant merely fails to intervene on a plaintiff's behalf. See id. at 1126. In the latter situation, no duty was imposed on a landowner except where a special relationship existed between the plaintiff and defendant. See id. Such a relationship has been recognized between landowners and persons injured while on the landowner's property. Traditionally, persons on a landowner's premises are grouped into one of three categories: (1) trespassers; (2) licensees; and (3) invitees, and the duty imposed on landowners for injuries to these people is determined by the injured person's classification. Of course, no such classification exists for persons injured while off the land of a landowner.
[5] Comment b of section 363 of the Restatement (Second) of Torts defines "natural condition of the land" as a "condition of land that has not been changed by any act of a human being." This same comment provides that "trees or plants planted or preserved, and changes in the surface by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces," are considered artificial rather than natural conditions. Restatement (Second) of Torts § 363, cmt. b.

Irrespective of the distinction between misfeasance and nonfeasance, commentators and courts alike have traditionally imposed a duty on landowners for injuries to persons outside of the land caused by artificial conditions. See, e.g., Restatement (Second) of Torts, §§ 364, 368. The parties here do not contest the issue of whether the foliage was a natural or artificial condition. However, some courts have stated that when this is disputed, a question of fact arises that must be resolved before it can be determined whether a duty arises. See Spears v. Blackwell, 666 N.E.2d 974, 977 (Ind.Ct.App.1996).
[6] See, e.g., Coburn v. City of Tucson, 143 Ariz. 50, 691 P.2d 1078, 1080-81 (1984) (stating that landowner has no duty to use land so as to protect travelers); Pedigo v. Smith, 395 So.2d 615, 616 (Fla. 5th DCA 1981) (adhering to the view that in the absence of a violation of a statute regulating the removal or height of trees, there is no common law duty on a landowner to maintain his property in a condition so that a motorist approaching a public highway intersection has a clear view of other traffic and intersection traffic signals); Evans v. Southern Holding Corp., 391 So.2d 231, 232 (Fla. 3d DCA 1980) (same); Ziemba v. Mierzwa, 142 Ill.2d 42, 153 Ill.Dec. 259, 566 N.E.2d 1365, 1365 (1991) (holding that a landowner has no "duty to maintain his property in such a manner that his driveway is visible to travelers on an adjacent roadway"); Pyne v. Witmer, 159 Ill.App.3d 254, 111 Ill. Dec. 452, 512 N.E.2d 993, 997 (1987) (holding that landowners had no duty to remove foliage from their property so motorists approaching intersection could see other approaching motorists); Fritz v. Parkison, 397 N.W.2d 714, 717 (Iowa 1986) (finding landowner owed no duty to motorist where land-owner planted trees but trees did not obstruct traveled way); Bohm v. Racette, 118 Kan. 670, 236 P. 811, 812-13 (1925) (holding that landowner is not liable for collision on adjoining highway caused by hedges obstructing view); Sierra-Melendez v. Brown, 410 So.2d 258 (La.Ct.App.1982) (holding that absent statute, landowner bordering roadway owes no duty to motorists); Barnes v. Stone-Quinn, 195 A.D.2d 12, 606 N.Y.S.2d 485, 486 (1993) (finding landowner has no common law duty to control vegetation on property for benefit of motorists).
[7] The distinction between artificial and natural conditions is rooted in times when land was mostly unsettled and uncultivated, and the landowner was shielded from liability because he could not be expected to keep account of and remedy all of the conditions arising from purely natural causes on his land. See Mahurin v. Lockhart, 71 Ill.App.3d 691, 28 Ill.Dec. 356, 390 N.E.2d 523 (1979). The distinction has also been linked to a perceived substantive difference between the concepts of nonfeasance and misfeasance with the creation of artificial conditions being placed in the misfeasance category as distinct from simply leaving natural conditions alone.
[8] Section 364 provides:

A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if
(a) the possessor has created the condition, or
(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or
(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it.
Section 368 provides:
A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
(a) are traveling on the highway, or
(b) forseeably deviate from it in the ordinary course of travel.
[9] It specifically provides: "[N]either a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land."
[10] The comment on subsection (2) of section 363 of the Restatement (Second) of Torts reads:

e. Trees. The rule stated in Subsection (2) is an exception which has developed as to trees near a public highway. It requires no more than reasonable care on the part of the possessor of the land to prevent an unreasonable risk of harm to those in the highway, arising from the condition of the trees. In an urban area, where traffic is relatively frequent, land is less heavily wooded, and acreage is small, reasonable care for the protection of travelers on the highway may require the possessor to inspect all trees which may be in such dangerous condition as to endanger travelers. It will at least require him to take reasonable steps to prevent harm when he is in fact aware of the dangerous condition of the tree.
Restatement (Second) of Torts § 363 cmt. e (1965). This exception can be narrowly read to apply only to cases where dead or rotting trees fall on the roadway and cause harm. See Driggers v. Locke, 323 Ark. 63, 913 S.W.2d 269, 272 (1996) (stating that "[c]omment e. to that section [§ 363(2)] makes it clear that the danger contemplated is that resulting not from the presence of the trees but from their condition, i.e., the probability that they may break and fall on the highway"). However, at least one case has specifically refused to interpret it so narrowly. See Zapata v. Kariyaparambil, No. 14-96-00901-CV, 1997 WL 566222, at *3 (Tex.App.1997) (specifically relying on this comment to impose on a landowner a duty of care to prevent his trees from blocking the view of a stop sign).
[11] The majority did recognize two limited exceptions to the rule of no duty, including situations where the "obstruction protrudes onto public property" and "where [the] obstructions... are in violation of some statute." 391 So.2d at 233.