810 So.2d 1034 (2002)
Vincent GIBBS, Appellant,
v.
John Philip HERNANDEZ, Triple R Paving, Inc. and Freedom Pipeline Corp., Appellees.
No. 4D01-1171.
District Court of Appeal of Florida, Fourth District.
March 13, 2002.
*1035 Arnold R. Ginsberg of Ginsberg & Schwartz, Miami, and Lekach, Klitzner & Ansel, Hollywood, for appellant.
Brian P. Knight and Hinda Klein of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for appellee Freedom Pipeline Corp.
WARNER, J.
This appeal arises from a final summary judgment for a defendant in a negligence action filed by appellant for injuries sustained when his motorcycle was struck by an oncoming car at an intersection which was under construction. The trial court found that appellant's negligence was an intervening cause absolving appellee Freedom Pipeline Corp. from liability. Because this was an issue of fact for the trier of fact, we reverse.
Triple R Paving, Inc. ("Triple R"), a general contractor, was hired to do road work at the intersection of 58th Avenue and Griffin Road in Davie, Florida. Triple R subcontracted some of the work to Freedom Pipeline Corp. ("Freedom"), including the drainage pipe work. According to Triple R's President, Freedom was solely responsible for the placement of the drainage pipes when they were delivered to the construction site.
On the date of the incident, appellant was riding his motorcycle north on 58th Avenue and approaching the dead end at Griffin Road, a two-lane road traveling east and west. Having taken that route before, appellant knew Griffin Road was under construction but never noticed the concrete drainage pipes sitting on the southwest corner of the intersection.
As he approached the Griffin Road stop sign, appellant checked traffic to his left and right and could see about two blocks down. He then came to a complete stop (ten feet from the intersection), placed both feet on the ground, and realized, as he looked to the left, that the pipes were obstructing his view of eastbound traffic. There was a shoulder between the guardrail and Griffin Road, but it was smaller than the length of appellant's motorcycle.
Due to his obstructed view, appellant walked his motorcycle to the intersection to see if any vehicles were coming. By the time he could see eastbound traffic, his front tire and approximately a third of the motorcycle were on Griffin Road. Appellant denied being able to see traffic before being on Griffin Road.
When he was finally able to see to his left, appellant observed a car approximately fifty feet away traveling eastbound towards him. Even though appellant had *1036 pulled partially onto Griffin Road believing an eastbound car could negotiate around him, once in the road, the car could not negotiate the lane with the motorcycle in it. According to appellant, he had three choices: dive off the motorcycle and let it get run over; stay where he was and risk being hit; or try to negotiate the intersection. He chose the last option, believing it was the safest. He testified that moving the motorcycle backwards was not an option because it would take too long. The motorcycle did not have reverse, requiring him to physically push it back. Although appellant successfully crossed the eastbound lane, the oncoming eastbound driver swerved and struck appellant in the west-bound lane.
Appellant sued the eastbound driver, Triple R, and Freedom. Count III alleged that Freedom "owed a duty to motorists including appellant to perform their work in a manner that would be safe and not interfere with traffic in the area." Freedom denied its negligence and affirmatively alleged that appellant contributed to or solely caused his injuries.
Freedom eventually moved for summary judgment. It relied on appellant's testimony that once he moved into the shoulder area of Griffin Road, his view was no longer obstructed, allowing him to see the oncoming car fifty feet away before deciding to make his left-hand turn. Thus, Freedom claimed that the obstructed view caused by the pipes did not proximately cause appellant's injuries. At the motion hearing, Freedom reiterated that "[t]he whole basis of our argument is that the pipe was not the proximate cause of the accident" but also argued that it owed no duty to appellant.
In opposition, appellant filed an affidavit from Miles Elliott Moss, an alleged expert in traffic engineering, traffic accident reconstruction, and civil engineering. He reviewed the crash report, photographs of the scene, and the depositions. Pursuant to his crash reconstruction calculations, Moss opined that "[w]hen Vincent Gibbs began to accelerate from a stopped position, [the eastbound] vehicle was probably not visible due to the pipes stored on the southwest corner." He further opined that the placement of the pipes created a hazardous condition, violating "line of sight" standards as dictated in both the Manual on Uniform Minimum Standards for Design, Construction and Maintenance of Street and Highways, and the Roadway and Traffic Design Standards. Because appellant would have been able to see the oncoming eastbound car if the standards had been met, Moss attested that the placement of the pipes "was a substantial proximate cause of the crash."
The court ultimately granted Freedom's motion and entered summary judgment in its favor. While the order contains no rationale, the court indicated at the motion hearing that Freedom did not proximately cause appellant's injuries; rather, the court believed appellant could have backed up, chose not to, and lost his gamble. This timely appeal followed.
To prove a cause of action for negligence, a plaintiff must prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiffs injury, and the plaintiff incurred damages as a result. See Sussman v. First Fin. Title Co. of Fla., 793 So.2d 1066, 1069 (Fla. 4th DCA 2001). In McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), the supreme court clarified how to analyze the duty and proximate cause elements.
The existence of a legal duty is a threshold question for the court. See id. at 502; Aime v. State Farm Mut. Ins. Co., 739 So.2d 110, 112 (Fla. 4th DCA 1999). Such "a legal duty will arise whenever a human endeavor creates a generalized and *1037 foreseeable risk of harming others." McCain, 593 So.2d at 503. Once that foreseeable zone of risk has been created, the defendant has a duty "either to lessen the risk or to see that sufficient precautions are taken to protect others from the harm that the risk poses." Kaisner v. Kolb, 543 So.2d 732, 735 (Fla.1989). Thus, ["a ] s to duty, the proper inquiry for the reviewing appellate court is whether the defendant's conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred." McCain, 593 So.2d at 504 (bold emphasis added).
By placing the large cement pipes on the corner of an intersection, Freedom created a "foreseeable zone of risk" where motorists had an obstructed view of eastbound traffic on Griffin Road. Therefore, Freedom had a duty to take necessary precautions and minimize the risk inherent in that obstructed view. Cf. Whitt v. Silverman, 788 So.2d 210 (Fla.2001) (holding a private landowner can be held liable for negligently keeping property in a manner that obstructs a driver's view of traffic).
The primary issue upon which the trial court granted summary judgment was causation. Causation requires "a natural, direct and continuous sequence between the negligent act and the injury [so] that it can reasonably be said that but for the act the injury would not have occurred." McDonald v. Fla. Dep't of Transp., 655 So.2d 1164, 1168 (Fla. 4th DCA 1995). The harm is proximate "if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." McCain, 593 So.2d at 503. In other words, the injury was not "caused by a freakish and improbable chain of events." Id. "In this context, foreseeability is concerned with the specific, narrow factual details of the case, not with the broader zone of risk the defendant created." Id. Due to the fact-intensive nature of this proximate cause analysis, it should generally be left to the fact-finder, unless reasonable minds could not differ that the injury was either "foreseeable" or "freakish." Id. at 504; Brito v. County of Palm Beach, 753 So.2d 109, 113 (Fla. 4th DCA 1998), rev. denied, 735 So.2d 1283 (Fla.1999); Dadic v. Schneider, 722 So.2d 921, 923 (Fla. 4th DCA 1998). In this case, the harm caused by the location of the pipes was "proximate" because blocking a motorist's view of oncoming traffic is the type of conduct which "prudent human foresight" can expect to cause harm similar to that incurred by appellant.
From its comments at the summary judgment hearing, the court believed that appellant's actions constituted an intervening event absolving Freedom of liability. However, "an intervening act will absolve an original tortfeasor of liability only when it is independent of the original negligence and not set in motion by the original negligent act." McDonald, 655 So.2d at 1168 (emphasis added).
According to the trial court, the intervening act was appellant's decision to proceed with his turn onto Griffin Road instead of moving backward. However, the only evidence regarding appellant's ability to move back came from appellant himself, who testified that moving backward was impossible in that situation. Even if there were evidence to the contrary, at least it is an issue of material fact. In addition, appellant's decision was "set in motion" by the placement of the pipes and was therefore not independent of the alleged negligent act. Id.; see also Longa v. Eskimo Freeze, Inc., 468 So.2d 468, 469 (Fla. 4th DCA 1985) (reversing a directed verdict for defendant because plaintiffs awareness of a dangerous condition and how he negotiated the condition was a comparative negligence question for the jury); Fernandez v. Flores, 467 So.2d 364, 365 (Fla. 2d *1038 DCA 1985) (holding a jury question existed as to whether vehicles parked on a road shoulder obstructed a driver's view and contributed to an accident).
Freedom relies on Metropolitan Dade County v. Colina, 456 So.2d 1233 (Fla. 3d DCA 1984), where a driver approached an intersection with a non-functioning traffic light, stopped, saw a car coming in the opposite direction, and proceeded into the intersection even though he knew the oncoming driver may not stop. The court held that the drivers' respective actions constituted superceding, intervening causes, and the county's alleged negligent maintenance of the traffic signal did not proximately cause the accident. See id. at 1235. This case is distinguishable because the pipes at the intersection blocked appellant's view of oncoming traffic, requiring him to move forward into the intersection to see. He could not see the vehicle which struck him before his motorcycle was sticking into the intersection and in peril. In contrast, Colina stopped in a safe position, observed the oncoming car, and voluntarily chose to proceed into the intersection.
Because "[i]t is axiomatic that summary judgments should be cautiously granted in negligence cases," Fenster v. Publix Supermarkets, Inc., 785 So.2d 737, 739 (Fla. 4th DCA 2001), especially where a plaintiff is negligent and comparative fault questions exist, see Dykes v. City of Apalachicola, 645 So.2d 50, 53 (Fla. 1st DCA 1994); McCabe v. Walt Disney World Co., 350 So.2d 814, 815 (Fla. 4th DCA 1977), we reverse the final summary judgment and remand for further proceedings.
FARMER and GROSS, JJ., concur.