GROSS, J.
Pompano Motor Company appeals a final order after a non-jury trial denying its claim for declaratory judgment against Chrysler Insurance Company which challenged Chrysler’s failure to provide insurance coverage under a “Title Errors and *756 Omissions Liability Endorsement” to a commercial lines insurance policy. We affirm the circuit court’s ruling that there was no coverage afforded to Pompano Motor under the policy.
Pompano Motor operates a car dealership. In July 1998, Fred Brandau and Ivan Rasullo purchased two cars from the dealership. Brandau and Rasullo were executives of Financial Federated Title & Trust, Inc. The two men appeared wealthy to the dealership’s employees; they dressed nicely and arrived at the dealership in a Mercedes-Benz. The two men arranged to purchase the cars with company checks and requested that the title to the vehicles be placed in other individuals’ names. It was not uncommon for a purchaser to title a car in another’s name.
The dealership took the checks it received from Brandau and Rasullo to the issuing bank to insure that they were legitimate. The dealership did not suspect that the funds were derived from illegal activities.
Brandau and Rasullo later returned to the dealership to purchase two more cars, explaining that the vehicles would be used at Brandau’s Connecticut home. The men paid the dealership with company checks which were taken to the issuing bank and cashed. The two men bought a fifth car in March 1999. On that transaction, they wired the funds to the dealership.
At the instruction of Brandau and Ra-sullo, the five cars were titled in the following manner: one to Brandau, one to Major Muscle Auto Sales, Inc., a company owned by Brandau, one to Mary Anne Billinghurst, an employee of Financial Federated, and two to David Hoffgarten, an associate of Brandau’s.
Financial Federated filed bankruptcy and a trustee was appointed for it. In 2001, the trustee filed a complaint against Pompano Motor seeking to set aside the transfer of the automobiles, under various statutory and common law theories contending that the transfers were fraudulent. The trustee later amended his complaint to add a cause of action for negligence.
For the bankruptcy trustee’s lawsuit, Pompano Motor sought coverage under the “Title Errors and Omissions Liability Endorsement” of its policy with Chrysler Insurance. That provision stated:
We will pay all sums an “insured”[1] legally must pay as damages because of an alleged or actual negligent act, error or omission by an “insured” in “Title Paper Preparation”.[2] However, coverage applies only if:
1. The purchaser with criminal intent to defraud the lienholder or legal owner transfers the title; or
2. The lienholder or legal owner makes claim or brings “suit”[3] against you for damages because of the error or omis *757 sion in title or omission in the title registration.
Chrysler Insurance denied coverage.
Pompano Motor responded with its complaint against Chrysler Insurance for a declaratory judgment. Pompano Motor contended that it should be covered under the policy for the damages sought by the bankruptcy trustee relating to Pompano Motor’s transfer of car titles to individuals and entities other than Financial Federated.
Pompano ultimately settled with the bankruptcy trustee for $50,000 and pursued its declaratory relief action against Chrysler Insurance.
After a non-jury trial, the circuit court entered a detailed judgment in favor of Chrysler Insurance. The court concluded
that Pompano did not owe a duty to FinFed, and therefore was not negligent in its titling of the five vehicles at issue[ ]. Because there was no negligence on the part of Pompano, there is no insurance coverage under the “Title Errors and Omissions Endorsement.”
We agree with the circuit court’s conclusion and also affirm for an additional reason.
First, there was no coverage because Financial Federated was not a “lien-holder or legal owner” within the meaning of the policy. In his lawsuit against Pompano Motor, the bankruptcy trustee stood in the shoes of the debtor, Financial Federated. See O’Halloran v. First Union Nat'l Bank of Fla., 350 F.3d 1197, 1202 (11th Cir.2003). Under the policy, there was coverage for Pompano Motor’s negligent act, error or omission in “Title Paper Preparation” and “[t]he lienholder or legal owner ” made claim or brought “suit” against Pompano Motor for damages because of the error or omission. (Emphasis added).
The policy does not define the term “legal owner.” When a term has not been defined by policy, its common definition should prevail. See, e.g., Great Am. Ins. Cos. v. Souza, 855 So.2d 187, 188-89 (Fla. 4th DCA 2003). Black’s Law Dictionary defines “legal owner” as “[o]ne recognized by law as the legal owner of something; esp., one who holds legal title to property for the benefit of another. See TRUSTEE.” [4] Blacr’s Law DiCtionajry 1131 (7th ed.1999). “Legal title” is defined as “[a] title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest. Cf. equitable title.”[5] Id. at 1493.
Here, none of the five automobiles sold by Pompano Motor were titled in the name of Financial Federated. Financial Federated’s ownership interest in the cars, if any, was equitable. Lawsuits would have been required to convert such equitable interests into legal ownership. Because the trustee stood in the shoes of only an “equitable” owner, and not a legal owner of the cars, there was no coverage under the policy.
As to the second basis for affir-mance, we agree with the circuit court that there was no “negligent act, error or omission” by Pompano Motor within the meaning of the policy. Pompano Motor did not owe a duty to Financial Federated to look *758 behind the transactions and conduct quasi-criminal investigations.
The existence of a legal duty in a negligence case is a threshold question to be decided by the court. See Gibbs v. Hernandez, 810 So.2d 1034, 1036 (Fla. 4th DCA 2002). As we wrote in Gibbs:
Such “a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others.” McCain [v. Fla. Power Corp., 593 So.2d 500, 503 (Fla.1992) ]. Once that foreseeable zone of risk has been created, the defendant has a duty “either to lessen the risk or to see that sufficient precautions are taken to protect others from the harm that the risk poses.” Kaisner v. Kolb, 543 So.2d 732, 735 (Fla.1989). Thus, “[a]s to duty, the proper inquiry for the reviewing appellate court is whether the defendant’s conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred.” McCain, 593 So.2d at 504.
Id. at 1036-37 (emphasis in original); see also Whitt v. Silverman, 788 So.2d 210, 216-17 (Fla.2001).
We adopt the following reasoning of the circuit court that to impose a duty on Pompano Motor
to investigate the source of funding from [Financial Federated], to make sure there was no misappropriation involved, would be expecting them to discover a massive fraud operation. The government, investors, and creditors all were unable to discover this massive fraud. In fact, the fraud went unnoticed until [Financial Federated] was unable to meet its financial obligations. As such, it is untenable to think that Pompano [Motor] should have discovered the fraud. Given the fact that Mr. Brandau and Mr. Rassulo were in a fiduciary relationship with [Financial Federated], it would be probable that they would act in good faith with respect to the company’s funds, but it was only “possible” that they would act in bad faith. Foreseeable consequences are not what might possibly occur, rather, they are consequences that are probable. [Citation omitted]. Inasmuch as Mr. Bran-dau and Mr. Rassulo were both authorized to purchase the vehicles with a company check, it would be reasonable for Pompano [Motor] to title the vehicles in the names they designated. A purchaser of a vehicle should be able to title the car in the name of the recipient when the vehicle is a gift; or for any other legitimate purpose....
AFFIRMED.
POLEN and KLEIN, JJ., concur.

. " 'Insured’ means, you, your partners, employees, directors or shareholders, but only while acting within the scope of their duties.”

. " 'Title Paper Preparation' means, the preparation of official title papers for registering an 'auto' sold by an 'insured', including the designation of a lienholder who holds financial interest in the 'auto.' ”

. " 'Suit' means any civil proceeding in which: 1. Damages because of 'bodily injury', or 'property damage'; or 2. A 'covered pollution cost or expense’, to which this insurance applies, are claimed. 'Suit' includes:
a. An arbitration proceeding in which such damages or 'covered pollution costs or expenses' are claimed and to which the 'insured’ must submit or does submit with or consent; or
b. Any other alternative dispute resolution proceeding in which such damages or 'covered pollution costs or expenses' are claimed and to which the insured submits with our consent.”

. "Trustee” is defined as "[o]ne who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary.” Black's Law Dictionary 1519 (7th ed.1999).

. In contrast, "equitable title” is title "that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title.” Id. at 1493.